Scott A. Ambrose, Esq. (012614)
Andrew L. Gartman, Esq. (031718)
**BURG SIMPSON ELDREDGE HERSH & JARDINE, PC**
2390 East Camelback Road, Suite 403
Phoenix, Arizona 85012
Telephone: (602) 777-7000
Fax: (602) 777-7008
SAMBROSE@BURGSIMPSON.COM
AGARTMAN@BURGSIMPSON.COM
AZCOURT@BURGSIMPSON.COM
*Attorneys for Plaintiff estate and beneficiaries*

Shiloh K. Hoggard, Esq. (023271)
**LAW OFFICE OF SHILOH K. HOGGARD, PLLC**
850 Cove Parkway, Suite C
Cottonwood, Arizona 86326
Telephone: (928) 649-3400
Fax: (928) 772-8695
SHILOH@HOGGARD-LAW.COM
*Attorney for Plaintiff Billie Giordano*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA - PHOENIX DIVISION

| | |
|---|---|
| **The Estate of Melonee Duval**, by and through its personal representative, **Issac Navarrette; Issac Navarrette,** individually and on behalf of all persons with a statutory right of recovery for the wrongful death of Melonee Duval, <br><br>     *Plaintiffs*, <br><br> vs. <br><br> **Paul Penzone**, in his official capacity as Sheriff of Maricopa County; **Maricopa County**, a political subdivision of the State of Arizona; **Sean Mendoza**, individually and in his capacity as a deputy of the Maricopa County Sheriff's Office, <br><br>     *Defendants*. | Case No. <br><br><br> **COMPLAINT - JURY TRIAL DEMANDED** |

Plaintiffs the Estate of Melonee Duval and Issac Navarrette, in his individual capacity, and on behalf of the statutory beneficiaries of Melonee Duval, and as personal representative for the Estate of Melonee Duval, for the complaint against Defendants, hereby allege as follows.

## **NATURE OF ACTION**

1.     This is a complaint for damages regarding police misconduct and the excessive use of deadly force.  Defendants are governmental law enforcement officers and agencies that were responsible for shooting and killing Melonee Duval.

2.     On June 19, 2019, Defendants repeatedly shot Melonee Duval in the head and body.  Just prior to the shooting, Melonee Duval was driving her motor vehicle in a safe and prudent manner.  Defendants approached Ms. Duval's vehicle with weapons drawn and pointed at Ms. Duval. Defendants sought to arrest her passenger; this was the reason Defendants surrounded her vehicle with their vehicles.  Ms. Duval posed no threat to Defendants and nobody in her car was armed with a weapon of any kind.  Defendants barricaded Ms. Duval's car with their own vehicles. Defendants' vehicles were unmarked and Defendants did not use red and blue police flashing lights to identify themselves.  Defendant surrounded the Duval vehicle with weapons loaded and pointing at Ms. Duval.  Without justification, and in an unlawful, unjustified abuse of excessive force, Defendants began shooting high powered firearms into Ms. Duval's vehicle.  Ms. Duval was shot numerous times in the head and body.  She required surgical intervention and hospitalization. She succumbed to her gunshot wounds to the head and died on June 29, 2019.  Plaintiffs are the Estate of Melonee Duval and her surviving heirs who come to this

Court seeking redress for the Constitutional violations of Ms. Duval and for her wrongful death.

## **PARTIES**

3.     Pursuant to A.R.S. §12-612, Issac Navarrette is the proper party to bring this action on behalf of all statutory beneficiaries of Melonee Duval.

4.     Melonee Duval, at the time of her death was 40-years of age and a resident of Maricopa County, Arizona, where the events giving rise to this action occurred.

5.     Issac Navarrette, a resident of Yavapai County, Arizona, is the eldest, surviving son of Melonee Duval and the appointed Personal Representative of the Estate of Melonee Duval.

6.     The Estate of Melonee Duval, brings an action against Defendants for the wrongful death of Melonee Duval, and for claims regarding violations to her Constitutional rights.

7.     Plaintiff Issac Navarrette also brings this action on behalf of himself and all statutory beneficiaries of Melonee Duval.

8.     Pursuant to A.R.S. §12-612 certain Statutory Beneficiaries may bring a claim for wrongful death of a family member.  The Statutory Beneficiaries of Melonee Duval include the following individuals:

     a.  Billie Giordano, as the natural mother of Melonee Duval;

     b.  Isaac Navarrette, as the eldest son of Melonee Duval;

     c.  Adriyanna Navarrette, as the daughter of Melonee Duval;

     d.  Jaylen Klockenga, as the youngest son of Melonee Duval.

9. Defendant Paul Penzone is the Sheriff of Maricopa County and the chief policymaker of Maricopa County Sheriff's Office. He is liable for the acts and omissions of his employees, deputies and agents under the doctrine of *respondeat superior*; hereinafter referred to as Defendant "Sheriff Penzone" or "Penzone."

10. Defendant Maricopa County is a political subdivision of the State of Arizona, organized and existing under the laws of the State of Arizona; hereinafter referred to as Defendant "Maricopa County" or "Maricopa."

11. Defendants Penzone and Maricopa County operated and acted herein through the Maricopa County Sheriff's Office (MCSO) providing law enforcement services throughout Maricopa County, State of Arizona.

12. Defendant Sean Mendoza is named herein in his individual and official capacity, as a sworn law enforcement deputy with the MCSO, the County and/or the MCSO Fugitive Apprehension Task Force (FATE). He is hereinafter referred to as Defendant "Mendoza". Based on information and belief, Defendant Mendoza took part in, and is responsible for the wrongful shooting of Melonee Duval as alleged herein.

13. Defendants Maricopa County and Sheriff Penzone maintain virtually exclusive custody and control of the evidence and investigative materials surrounding the shooting of Melonee Duval, but have refused and continue to refuse Plaintiffs' request for the production or disclosure of such evidence, which obstructs Plaintiffs from providing the true name of each law enforcement personnel responsible for the shooting and death of Melonee Duval at the time this Complaint was due.

14. Based on information and belief, United States law enforcement agents, including agents of the Federal Bureau of Investigations (hereafter federal agents) were involved in, participated in, took part in, and are jointly and severally responsible for the events described herein to the same extent as the named defendants herein, and are liable to Plaintiffs for the misconduct alleged herein. Plaintiffs anticipate amending this Complaint to include the appropriate federal agents as defendants upon expiration of the federal notice of claim procedure.

## JURISDICTION & VENUE

15. As alleged in detail herein, this lawsuit claims compensable violations of the United States Constitution, including claims of excessive deadly force in violation of the Fourth Amendment's prohibition against unreasonable seizures. Accordingly, this Court has jurisdiction of this matter as the Constitution vests federal courts with authority to hear cases arising under the Constitution or the laws of the United States. U.S. Constitution art III, §2.

16. This court is vested with subject-matter jurisdiction as Plaintiffs' claims involve questions of federal law. This district court has original jurisdiction of this civil action pursuant to 28 U.S.C. §1331 as it arises under the Constitution, laws, or treatises of the United States.

17. In addition to the claims involving questions of federal law, this lawsuit also claims compensable violations of Arizona state law arising out of the same events and conduct that give rise to the federal claims. These state law claims are substantially related to the original claims involving questions of federal law. Pursuant to 28 U.S.C. §1367 this

court has supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

18.    The amount in controversy exceeds the jurisdictional limitations of this Court.

19.    Venue is proper in this district pursuant to 28 U.S.C. §1391, et seq., because a substantial part of the events giving rise to this claim occurred in Arizona and in this district.

20.    Defendants are subject to the Court's personal jurisdiction because at all times relevant hereto Defendants conduct as alleged herein was in the State of Arizona. Defendants have sufficient minimum contacts with Arizona such that exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.

21.    Regarding Plaintiffs' claims under Arizona law, Plaintiffs served a timely notice of claim, pursuant to A.R.S. §12-821.01 upon Defendants. The notice of claim complied in all respects with the applicable statute, was timely served and is deemed denied by operation of law.

22.    The events that form the basis of this Complaint occurred on or about June 19, 2019, near the intersection of Grand Avenue (U.S. 60) and Thompson Ranch Road, in El Mirage, Maricopa County, Arizona.

### FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

23.    Plaintiffs reallege and incorporate by reference all preceding Paragraphs of this Complaint, as though expressly set forth in full herein.

24.     Defendant Penzone is the elected Sheriff of Maricopa County, and the chief policymaker of MCSO.

25.     After being elected Sheriff of Maricopa County, Defendant Sheriff Penzone "spearheaded" the creation of a law enforcement task force, known as the Fugitive Apprehension Task Force (FATE), hereinafter referred to as the "Task Force" or "Defendants' Fugitive Apprehension Task Force".

26.     The Task Force was allegedly created to apprehend suspected criminals in Maricopa County communities as part of law enforcement activities for Defendants Maricopa County and Penzone.  Defendants Penzone and Maricopa County run, operate and are responsible for the Task Force.  Task Force operators and agents were acting on behalf of the named Defendants herein who are responsible for the Task Force operations through doctrines of agency, employment and *respondeat superior.*

27.     Defendants' Fugitive Apprehension Task Force conducts "operations" or missions throughout Maricopa County and uses unmarked vehicles, high-powered weaponry, including automatic assault rifles, such as M4 or M16; full tactical gear, such as helmets and body armor, in their "operations" or missions.

28.     Defendants' Fugitive Apprehension Task Force follows a policy, practice or custom of employing a high degree of force without regard to the minimum level of force necessary to complete its "operation" or mission, or with precautions for innocent bystanders in the proximity of their suspect.

29.     Defendants' Fugitive Apprehension Task Force operates according to the training, practice or custom of drawing their weapons, including their high-powered

automatic assault rifles, at unarmed persons and/or innocent bystanders, who pose little to no risk of serious physical injury to the Task Force operators or the public.

30.     Defendants' Fugitive Apprehension Task Force also has a policy, practice or custom of executing its "operations" or missions when its intended suspect is in a vehicle.

31.     Defendants' conducts these "operations" or missions without minimizing the risk to innocent bystanders or non-criminal associates of their target.

32.     In May 2019, an arrest warrant was issued for Ernesto Izaguirre, a non-party hereto.

33.     Defendants' Task Force made no prior attempts to apprehend Izaguirre before June 19, 2019.

34.     On the evening of June 19, 2019, Melonee Duval was driving her red Dodge pickup in El Mirage, Arizona, with two passengers: Sara Torres (a 16-year old) in the back seat, and Ernesto Izaguirre in the front seat.

35.     At all relevant times on June 19, 2019, Defendants were conducting surveillance of Ernesto Izaguirre and were aware of the fact that Melonee Duval was driving her vehicle with the passengers listed in the preceding paragraph.

36.     At all relevant times, the members of Defendants Fugitive Apprehension Task Force were acting under color of law and within the course and scope of their employment with Defendants, Penzone, the County and/or MCSO.

37.     At all relevant times, the members of Defendants Fugitive Apprehension Task Force were acting jointly and in concert with each other or pursuant to a common design for the purpose of participating in the Task Force.

38.     The events of June 19, 2019, as alleged herein, were conducted by Defendants, and each of them, individually, jointly, or as a cooperative effort constituting an agency with other named Defendants.  Individual persons participating in the alleged events of June 19, 2019 were acting within the course of and scope of their employment with the other named defendants.

39.     On June 19, 2019, Melonee Duval did not present a serious risk of physical injury to the public, to law enforcement personnel, nor to the occupants of her vehicle.

40.     Before seizing Ms. Duval's red pickup, Defendants knew or should have known that Melonee Duval was driving her pickup with two passengers.

41.     On June 19, 2019, at about 10 p.m., Melonee Duval was preparing to stop at the red light at the intersection of Grand Avenue and Thompson Ranch Road, in Lane 1 (the far left lane), adjacent to the left-turn lane.  She then stopped her truck at the red light. In front of her was another vehicle, also stopped at the red light.

42.     After stopping for the red light, Defendants employed several unmarked law enforcement vehicles to surround Melonee Duval's pickup, as follows:

a.     One unmarked law enforcement vehicle included a white, four-door Chevrolet pickup, which Defendants caused to be parked or stopped directly in front of Duval's red pickup;

b.     Another unmarked law enforcement vehicle included a grey Dodge minivan, which Defendants caused to be placed directly behind Duval's red pickup;

c.     At least two additional unmarked vehicles, including one dark grey and one black/darker grey Dodge SUV, such as a Durango, that were placed on each side

of Duval's red pickup, as reflected in the image below:



43.     Defendants used their unmarked vehicles to barricade Duval's red pickup so as to prevent Duval's red pickup from driving away.

44.     Defendants were not aware of any specific circumstances that justified seizing Ms. Duval personally as she was not the target of the intended arrest.

45.     Defendants knew that any attempt to seize Izaguirre from a vehicle, at night, with full tactical gear and high powered weaponry posed an obvious and serious risk of harm to Melonee Duval and Sara Torres.

46.     Defendants callously and recklessly disregarded the risk their actions posed to the occupants of Duval's pickup.  Defendants knowingly, recklessly and needlessly placed Melonee Duval in risk of harm by placing her in harm's way.

47.     Defendants knew of the occupants of Duval's vehicle, and that Melonee Duval was in the driver's seat, Izaguirre in the front passenger seat, and Torres in the back

seat.

48.     Defendants' barricade of Duval's pickup also neutralized Melonee Duval's pickup from inflicting serious physical injury to Defendants or the public.

49.     Defendants seized, stopped, barricaded or otherwise pulled-over Melonee Duval's pickup truck. Melonee Duval did not commit any traffic violation.  Based on information and belief, Defendants sole purpose for taking such action in barricading the vehicle was to conduct an arrest of Izaguirre.

50.     Immediately after barricading Duval's pickup, Defendants approached the driver's window of the pickup with their weapons drawn and pointed upon Melonee Duval.

51.     While aiming their weapons at Melonee Duval, Defendants also shined their lights into her face and eyes to obstruct her vision.

52.     Melonee Duval was unarmed as she sat in the driver's seat of her barricaded red Dodge pickup.

53.     Melonee Duval did not have a firearm.

54.     Ernesto Izaguirre did not have a firearm.

55.     Sara Torres, a minor, did not have a firearm.

56.     Melonee Duval did not make any threatening movements.

57.     Ernesto Izaguirre did not make any threatening movements.

58.     Sara Torres did not make any threatening movements.

59.     Because of the manner by which Defendants barricaded Duval's pickup, Duval, Izaguirre and Torres did not, and could not, pose a threat or serious risk of harm to any of the armed law enforcement personnel who surrounded them.

60. Since Defendants' vehicles were all unmarked, the occupants of Duval's pickup could not identify Defendants as law enforcement.

61. Due to Defendants' barricading the Duval pickup, occupants were prevented from hearing any verbal warning or identification, had one been given.

62. Without warning or provocation, Defendants began to shoot their high powered firearms into Duval's pickup.

63. The shooting of firearms into the Duval vehicle were directed at Melonee Duval.

64. The shooting of firearms into the Duval vehicle and aiming such fire at Ms. Duval constituted the use of deadly force upon her.

65. Prior to firing their weapons, Melonee Duval did not act in any dangerous or harmful manner. She posed no threat of harm to Defendants or other law enforcement personnel in the area.

66. Defendants fired their weapons at Melonee Duval as she sat unarmed in the driver's seat of her red pickup.

67. Defendants, having surrounded Duval's pickup, caused bullets to go through the front windshield, driver's window and rear passenger window, as reflected in the images below:





68. Several bullets shot by Defendants struck Melonee Duval.

69. Defendants' shot Melonee Duval at least twice in the face, at least once in the leg, and at least once in the arm.

70. Several shots were fired from positions where the shooter could not see what Melonee Duval was doing.

71. Several operators fired their weapons without being in a position to see what the pickup occupants were doing.

72.     Defendants also fired into the pickup without witnessing the driver or other occupants present a risk of physical injury.

73.     Melonee Duval was shot at least four times by Defendants, as she sat unarmed in her barricaded pickup.

74.     Defendants knew or should have known that by firing into the pickup, they were placing Melonee Duval at a substantial risk of serious injury or death.

75.     Defendants consciously, willfully and recklessly disregarded the risks their actions posed to Melonee Duval.

76.     Defendants had no reason to believe that any occupant in the Duval pickup posed an imminent threat to anyone.

77.     Defendants had no reason or justification to use deadly force to seize Melonee Duval, Izaguirre, or Sara Torres.

78.     The specific operators who used deadly force will be identified with particularity once Defendants discloses the records and evidence of this incident.

79.     Upon information and belief, Defendant Mendoza is at least one of the operators who fired his weapon into the Duval pickup and at Melonee Duval.

80.     Defendant officers who fired weapons into the Duval pickup intended to shoot Ms. Duval knowing or should knowing that such action posed a significant risk of her being shot and killed.

81.     Defendants used deadly force upon Ms. Duval.  In order to use deadly force against Ms. Duval, Defendants were required to be factually justified in doing so.

82.     The use of deadly force against Ms. Duval was not legally or factually

justified. There were no facts present that would allow a reasonable officer to conclude the use of deadly force upon Ms. Duval was justified, legal, allowed or appropriate. Defendants' wrongful conduct violated clearly established rights of Melonee Duval. The wrongful conduct of Defendants herein is such that no objectively reasonable defendant could believe his or her conduct did not violate the rights of Melonee Duval. Defendants' conduct was not objectively reasonable. In fact it was patently unreasonable and excessive.

83. Despite this risk of being harmed, Defendants shot into the Duval pickup, striking Melonee Duval multiple times.

84. After being shot numerous times by Defendants, Melonee Duval was taken to Banner Boswell Medical Center, before airlifted to Banner Thunderbird Hospital. Defendants' wrongful acts caused Ms. Duval to require significant medical care.

85. After ten days of battling these injuries, on June 29, 2019, Melonee Duval died from the multiple gunshot wounds, caused by Defendants.

86. She incurred significant medical expenses fighting for her life.

87. As a direct and proximate result of their wrongful conduct, Defendants inflicted great physical trauma upon Ms. Duval who suffered horrific pain and indignity, until she died.

88. Plaintiffs, and the surviving family members of Melonee Duval, have lost their beloved mother or daughter, respectively. As a direct and proximate cause of the wrongful conduct alleged herein committed by Defendants, Plaintiffs have been deprived of their beloved mother or daughter and have suffered the following losses (i) the loss of her love, companionship, care, protection, and guidance since the death and in the future;

(ii) pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced, and reasonably probable to be experienced in the future; (iii) the income and services that have already been lost as a result of the death, and that are reasonably probable to be lost in the future; and (iv) reasonable expenses of funeral and burial or internment.

89.     Defendants are agents of each other as alleged herein. Law enforcement officers involved in this shooting and attempted arrest are employees and agents of the Defendants herein.  Said agencies are specific, direct, actual or ostensible.  As agents of one another Defendants are liable for the wrongful conduct of the other Defendants.

### COUNT I – VIOLATIONS OF FEDERAL LAW
*42 U.S.C. §1983, Fourth & Fourteenth Amendments – Excessive Force & Monell*
*(As Against all Defendants)*

90.     Plaintiffs reallege and incorporate by reference herein all preceding paragraphs of this Complaint as if expressly set forth in full herein.

91.     Pursuant to the Fourth Amendment of the United States Constitution, people are guaranteed to be free from unreasonable searches, unreasonable seizures, excessive force, or excessive deadly force, the latter being the most extreme seizure recognized.  State and local governments, including Defendants herein, are prohibited from violating a person's Constitutional rights, including Melonee Duval's rights, as applied to State actors by the Fourteenth Amendment of the U.S. Constitution.

92.     Pursuant to the Fourth Amendment, the use of deadly force against an individual requires the government show that the individual poses a significant risk of serious physical injury to law enforcement or the public.

93.     Melonee Duval posed no risk of injury to anyone, particularly Defendants.

94. Any risk perceived by Defendants was unjustified and caused by Defendants extremely reckless actions and callous disregard for the lives of the occupants of the Duval pickup, including Melonee Duval. It was objectively unreasonable to use deadly force against Melonee Duval.

95. It was grossly unreasonable for Defendants to suspect Melonee Duval of posing a risk of serious physical injury to Defendants.

96. The Fourth Amendment and United States Constitution require Defendants to consider the risk of injury posed to Melonee Duval and the other pickup occupants when devising a plan to apprehend Izaguirre.

97. Defendants created a tactical plan to apprehend Izaguirre that used the highest level of force recognized under the United States Constitution.

98. Defendants' have a policy, practice or custom of using the highest level of force in tactical plans for executing arrest warrants, without regard to the level of risk posed by the suspect.

99. Defendants have a policy, practice or custom of disregarding the risk of injury posed to innocent bystanders in creating tactical plans for executing arrest warrants.

100. In considering the level of force Defendants deemed necessary for Izaguirre's apprehension, Defendants were extremely reckless and deliberately indifferent to human life by using a tactical plan that placed Melonee Duval in an extremely dangerous position.

101. Defendants' tactical plan was conceived pursuant to Defendants' training, policy, practice or custom, which ignores the risk posed to innocent bystanders, such as

Melonee Duval.

102.   Defendants' unconstitutional policy, practice or custom was the moving force behind Defendants' tactical plan to apprehend Izaguirre.

103.   But for Defendants' unconstitutional policy, practice or custom of ignoring the risk posed to innocent bystanders, Defendants would have executed a tactical plan that did not expose Melonee Duval to such an extreme risk of injury or death.

104.   Defendants knew or should have known that there was a greater risk of injury to an unarmed person when the law enforcement's suspect is located in a vehicle.

105.   Defendants knew or should have known that Defendants could reduce the risk of injury to unarmed persons by taking steps to apprehend their suspect when the suspect is not located in a vehicle with other occupants.

106.   Despite such knowledge, Defendants deliberately chose to execute a tactical plan when Izaguirre was located inside a vehicle, and surrounded by innocent bystanders, such as Melonee Duval.

107.   In considering the degree of risk allegedly posed by Izaguirre, Defendants had a duty to take reasonable actions so as to protect Melonee Duval from being placed at a significant risk of harm.

108.   Melonee Duval—barricaded in her vehicle during a police ambush—was unarmed and posed no risk whatsoever to Defendants.

109.   Defendants knew or should have known of the significant risk of injury posed to Melonee Duval in Defendants' plan to apprehend Izaguirre.

110.   The risk of injury in which Defendants placed Melonee Duval was extremely

reckless and displayed gross indifference to human life.

111. Defendants, acting in their capacity as sworn law enforcement officers or deputies, failed to use reasonable force under the circumstances by drawing their weapons on and shooting Melonee Duval.

112. Defendants further violated Melonee Duval's Fourth Amendment rights against unreasonable seizure when it stopped her vehicle to commit a tactical "operation" or mission, with Melonee Duval deliberately placed at the epicenter of danger.

113. Defendants knew or should have known that, with Melonee Duval in the driver's seat, Defendants' tactical plan placed Melonee Duval in one of the most dangerous positions of the entire operation.

114. Melonee Duval was an innocent bystander and not the target of Defendants desire to apprehend a suspect.

115. Defendants have a policy, practice or custom of devising tactical plans with excessive force when their suspect is located in a vehicle.

116. Defendants' policy, practice or custom fails to take into consideration the risk posed to innocent bystanders or noncriminal affiliates of their suspect.

117. Defendants' policy, practice or custom unconstitutionally places innocent bystanders or noncriminal affiliates, such as Melonee Duval, at an unreasonable and substantial risk of injury.

118. Defendants' policy, practice or custom further violates the United States Constitution as it shows deliberate indifference or extreme recklessness for the safety and wellbeing of those affiliated with the suspect, such as Melonee Duval.

119.    Defendants' unconstitutional policies, practices, or customs promote the use of an extreme level of force when no force is necessary.

120.    Defendants made no attempt to use a lesser degree of force to apprehend Izaguirre.

121.    Defendants' deliberate indifference and reckless disregard for the constitutional rights and safety of Melonee Duval caused the death of Melonee Duval.

122.    Defendants displayed gross disrespect for the U.S. Constitution by using deadly force against Melonee Duval as she sat unarmed inside a barricaded vehicle.

123.    Defendants Sheriff Penzone and Maricopa County ratified the Task Force's unconstitutional policy, practice or custom by clearing the Task Force's shooting of Melonee Duval and claiming the Task Force's use of deadly force was justified.

124.    Defendants Sheriff Penzone and Maricopa failed to discipline the Task Force for their killing of Melonee Duval.

125.    Defendants Sheriff Penzone and Maricopa approved of the Task Force's policy, practice or custom of using a show of deadly force on every "operation" or mission to apprehend a suspect, even when the totality of the circumstances did not warrant such force.

126.    Punitive Damages may be awarded in claims involving violations of U.S. Constitutional rights, and brought under 42 U.S.C. §1983, when the Defendants exhibit reckless or callous disregard of, or indifference to, the rights or safety of others.  In this case, the Defendants' behavior in violating the rights of Melonee Duval were reckless, a callous disregard of and/or indifferent to her rights and safety.  As it pertains to Plaintiffs'

claims brought under 42 U.S.C. §1983, Defendants are liable to Plaintiffs for punitive or exemplary damages as alleged herein.

127.    Defendants' unreasonable and unjustified conduct as alleged herein interfered and deprived the surviving Plaintiffs of Melonee's familial relationship. Said conduct directly caused Ms. Duval to experience great pain and suffering until she died.

128.    The Estate of Melonee Duval is entitled to bring a claim for the Constitutional right violations inflicted upon Ms. Duval including the pre-death indignity, pain and suffering endured.    The heirs of Ms. Duval are entitled to bring a claim unconstitutional interference and deprivation of their familial relationship.

129.    The Constitutional right claims and violations alleged herein include, but are not limited to, (a) 4th Amendment claims for unreasonable force, excessive force, and seizure of a person; and (b) 14th Amendment claims for interference and deprivation of familial relationships, and deprivation of life.

## COUNT II – WRONGFUL DEATH
*(All Defendants)*

130.    Plaintiffs reallege and incorporate by reference all preceding Paragraphs of this Complaint as if expressly set forth in full herein.

131.    Defendants shot Melonee Duval without justification and their action and inaction amount to death by negligence, gross negligence, reckless disregard, and/or murder.

132.    All Defendants and their officers, deputies, agents and employees acted in concert with each other or pursuant to a common design and/or have provided substantial assistance or encouragement to the unknown Task Force operators or members who fired

at the Duval pickup, and all Defendants are therefore liable for the conduct of those operators or members who so fired in bringing about Melonee Duval's death.

133.   If Melonee Duval's death had not ensued, she would have been entitled to maintain an action to recover damages for Defendants' conduct.

134.   Pursuant to A.R.S. §12-611, Defendants are liable to Melonee Duval's statutory beneficiaries for her wrongful death.

135.   Plaintiffs have suffered and are entitled to, at a minimum, compensation for the loss of love, affection, companionship, care, protection, and guidance since Melonee's death and in the future; for the pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced and reasonably probable to be experienced in the future; for the income and services that have already been lost and that are reasonably probable to be lost in the future; for the reasonable expenses of funeral and burial; for the reasonable expenses of necessary medical care and services for the injury that resulted in the death; and for other related damages.

## COUNT III – ASSAULT AND BATTERY

*(As against All Defendants)*

136.   Plaintiffs reallege and incorporate by reference herein all preceding paragraphs of this Complaint as if expressly set forth in full herein.

137.   Defendants, and each of them, assaulted and battered Melonee Duval.

138.   Defendants, and each of them, intentionally caused harmful or offensive contact to Melonee Duval by shooting and killing her.

139.   The assault was not justified.

140.   Defendants Maricopa County and Penzone ratified the assault and battery of

Defendant Mendoza and the Unknown Task Force Operators against Melonee Duval.

141.    The harmful and offensive conduct and contact led to Melonee Duval's death, for which Plaintiffs are entitled to damages.

## COUNT IV – NEGLIGENCE and/or GROSS NEGLIGENCE

*(As against All Defendants)*

142.    Plaintiffs reallege and incorporate by reference herein all preceding paragraphs of this Complaint as if expressly set forth in full herein.

143.    Defendants owe a duty of care to members of the public with whom they come into contact and/or investigate, including Melonee Duval.

144.    Said duty of care includes a duty to act safely and reasonably in the operation of their duties on the night of Ms. Duval's shooting and in their operations leading up to said shooting.

145.    Defendants breached this duty by failing to adequately supervise their sworn law enforcement personnel on the Fugitive Apprehension Task Force.

146.    Defendants breached this duty by failing to adequately train their officers with respect to the pursuit of suspects, the seizure of suspects, and the risks of using force in making seizures.

147.    Defendants breached this duty by failing to adopt adequate and reasonable policies with respect to the pursuit of suspects, high risk stops, the seizure of suspects, the seizure of those occupying vehicles with suspects, and the risks of using force.

148.    Defendants breached this duty by acting in an unreasonable, imprudent, unsafe and dangerous manner in regards to shooting Ms. Duval.

149.    As a direct result of these breaches, Defendants caused Melonee Duval's

death.

150.    All Defendants and their deputies, agents and employees acted in concert with each other or pursuant to a common design.

151.    All Defendants and their officers, deputies, agents and employees that participated in the alleged events had the ability to correct, control, train, monitor, and restrain Defendant Sean Mendoza and the other operators/task force members who fired at the Duval pickup.

152.    All Defendants and their officers, deputies, agents and employees that participated in this incident failed to use reasonable care and recklessly disregarded obvious risks of harm to Melonee Duval.

153.    All Defendants and their officers, deputies, agents and employees negligently and carelessly caused the death of Melonee Duval by their failures to use reasonable care and their reckless disregard for the obvious risks of harm to Melonee Duval.

154.    All Defendants and their officers, deputies, agents and employees are liable for the conduct of the officers, operators or law enforcement personnel who fired at the Duval pickup in causing the death of Melonee Duval.

155.    Defendants' behavior was negligent and/or grossly negligent.

156.    As a direct result of Defendants' negligent, grossly negligent, deliberately indifferent, willful, wanton, and/or reckless conduct, Melonee Duval was killed, and Plaintiff and all statutory beneficiaries of Melonee Duval sustained damages, including pain and suffering, grief, emotional distress, loss of support, loss of love and affection, and loss of enjoyment of life.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray for Judgment against Defendants, and all of them, as follows:

A. For general damages, including but not limited to the loss of love, affection, companionship, and guidance resulting from the death of Melonee Duval, pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced and reasonably probable to be experienced in the future, and economic losses and loss of income, hedonic damages, and Melonee Duval's pre-death pain and suffering;

B. For special damages, including but not limited to loss of support, the expenses of medical treatment, burial, and funeral;

C. For punitive or exemplary damages against those Defendants to which such a claim is legally and factually supported;

D. For pre and post-judgment interest to the extent permitted by law;

E. For attorneys' fees and taxable costs to the extent permitted by law; and

F. Such other relief as the Court deems just and proper.

**A TRIAL BY JURY IS RESPECTFULLY DEMANDED.**

**RESPECTFULLY SUBMITTED** this 17th day of June 2020.

BURG SIMPSON
ELDREDGE HERSH JARDINE, PC

By   /s/  Scott Ambrose
Scott A. Ambrose, Esq.
Andrew L. Gartman, Esq.
2390 East Camelback Road, Suite 403
Phoenix, Arizona  85016
*Attorney for Plaintiffs Estate and Statutory Representative.*

LAW OFFICE OF SHILOH K. HOGGARD, PLLC

By      /s/ *Shiloh Hoggard*
Shiloh K. Hoggard, Esq.
850 Cove Parkway, Suite C
Cottonwood, Arizona 86326
*Attorney for Plaintiff Billie Giordano*