1  ALLISTER ADEL
   MARICOPA COUNTY ATTORNEY

2

3  BY:    ANN THOMPSON UGLIETTA (013696)
          JONATHAN C. SIMON (029750)
          Deputy County Attorneys
4         uglietta@mcao.maricopa.gov
          simonj@mcao.maricopa.gov

5

6  CIVIL SERVICES DIVISION
   225 West Madison Street
7  Phoenix, Arizona 85003
   Telephone (602) 506-8541
   Facsimile (602) 506-4317
8  ca-civilmailbox@mcao.maricopa.gov
   MCAO Firm No. 00032000

9  Attorneys for Defendants

10              IN THE UNITED STATES DISTRICT COURT

11                FOR THE DISTRICT OF ARIZONA

12  The Estate of Melonee Duval, by and      No. CV20-01206-PHX-JJT (MHB)
    through its personal representative, Issac
13  Navarrette; Issac Navarrette, individually  **DEFENDANTS MARICOPA COUNTY'S**
    and on behalf of all person with a statutory  **AND PAUL PENZONE'S JOINT**
14  right of recovery for the wrongful death of  **MOTION TO DISMISS CERTAIN**
    Melonee Duval,                            **CLAIMS PER RULE 12(B)(6), FED R.**
15                                            **CIV. P.**

16              Plaintiffs,                    **[DOC. 1]**

17        v.

18
    Paul Penzone, in his official capacity as
19  Sheriff of Maricopa County; Maricopa
    County, a political subdivision of the State
20  of Arizona; Sean Mendoza, individually
    and in his capacity as a deputy of the
21  Maricopa County Sheriff's Office,

22
                Defendants.
23

24

25

26

27

28

Pursuant to Rule 12(b)(6), Fed. R. Civ. P., Defendant Maricopa County ("County") and Defendant Maricopa County Sheriff Paul Penzone ("Sheriff" or "Sheriff Penzone") jointly move to dismiss the following claims alleged in the Complaint [Doc. 1]:

    1.    Section 1983 claims asserted against Sheriff Penzone and County [Count I];

    2.    State law vicarious liability claims asserted against County [Count II and Count IV];

    3.    State law negligence theories arising out of Deputy Mendoza's/FATE officers' alleged intentional acts asserted in state law wrongful death and negligence claims against Sheriff Penzone and County [Count II and IV]; and

    4.    State law negligent supervision and negligent training theories asserted in state law wrongful death and negligence claims against County [Count II and Count IV].

LRCiv 12.1(c) Certification:   On August 3, 2020, undersigned counsel wrote Plaintiffs' counsel, and on August 4, 2020, undersigned counsel had a meet and confer call with Plaintiffs' counsel, to discuss certain defective claims alleged in the Complaint.   On August 27 and August 28, 2020, the parties' counsel exchanged additional correspondence and engaged in an additional meet and confer call regarding those claims.   The parties reached an agreement to file their Stipulated Dismissal and Stipulated Clarifications RE: Certain Claims and Requests for Relief Asserted in Complaint, which was filed on September 1, 2020 [Doc. 24].   Because the parties did not reach agreement with respect to certain other defective claims, Sheriff Penzone and County are filing their Motion to Dismiss.

## I.    BACKGROUND.

Assuming the fact allegations of the Complaint are true solely for purposes of this Motion to Dismiss,[1] Sheriff Penzone, as final policymaker for Maricopa County Sheriff's Office ("MCSO"), established a fugitive apprehension task force ("FATE"), for the law enforcement purpose of apprehending suspected criminals in Maricopa County.  [Doc. 1, ¶¶ 1, 9, 24, 25, 26] Deputy Mendoza was a FATE officer.  [*Id.*, ¶ 12] On June 19, 2019, Melonee Duval was driving a vehicle with Ernesto Izaguirre sitting in the front passenger seat of the vehicle.  Another passenger sat in the rear seat.  [*Id.*, ¶ 34] Izaguirre was a fugitive from an arrest warrant issued in May 2019.  [*Id.*, ¶ 32] When Duval stopped the vehicle at a traffic light, FATE officers used their vehicles to surround Duval's vehicle, using a "vehicle barricade" maneuver to prevent Duval from driving away, for purposes of effectuating Izaguirre's arrest on the warrant.  [*Id.*, ¶¶ 42, 43, 49] None of the persons inside Duval's vehicle had firearms at the time of the stop.  [*Id.*, ¶¶ 52 – 55] FATE officers, including Deputy Mendoza, approached Duval's vehicle, then drew, aimed and fired their weapons at Duval, injuring her.  Duval later died from her injuries. [*Id.*, ¶¶ 50, 62 – 64, 67 - 69, 73, 79 - 80, 85] The above-described incident hereinafter is referred to as the "Duval Incident".

On June 17, 2020, Plaintiffs filed the Complaint, alleging the following claims against Defendants:  Section 1983 claims for violation of the Fourth Amendment (alleged

---

[1] The Complaint's fact allegations are presented as "assumed to be true" solely for purposes of this Motion to Dismiss.  Sheriff and County reserve and do not waive the right to deny, respond, object and assert affirmative defenses to each and every allegation, claim and request for relief asserted in the Complaint.

excessive force and unlawful seizure) and Fourteenth Amendment (alleged interference with familial relationships and deprivation of life) (*Id.*, Count I,  ¶¶ 90 - 129); state law wrongful death claim under A.R.S. § 12-611 (*Id.*, Count II,  ¶¶ 130 – 135); state law assault and battery claims (*Id.*, Count III, ¶¶ 136 – 141); and state law negligence claims (*Id.*, Count IV, ¶¶ 142 – 156).  Plaintiffs seek compensatory damages and punitive damages.  [Prayer for Relief, Doc. 1] The claims are asserted by Plaintiff Isaac Navarrette as Personal Representative of Melonee Duval [*Id.*, ¶¶ 5, 6], as well as Plaintiff Isaac Navarrette on behalf of himself and other alleged statutory beneficiaries of Melonee Duval (Adriyanna Navarrette, Jaylen Klockenga and Billie Giordino) under A.R.S. § 12-612.  [*Id.*, ¶¶ 7, 8]

On September 1, 2020, the parties filed their Stipulated Dismissal and Stipulated Clarifications RE: Certain Claims and Requests for Relief Asserted in Complaint [Doc. 24], stipulating to dismiss with prejudice the state law assault and battery claims [Count III]; limiting the pain and suffering compensatory damages claim solely to claims alleging violations of the U.S. Constitution; limiting the punitive damages claim solely to Deputy Mendoza for alleged violations of the U.S. Constitution; and clarifying that the claims asserted against Sheriff Penzone are made against him solely in his official capacity as Maricopa County Sheriff.  [*Id.*]

Plaintiffs also allege that federal law enforcement agents (FBI) are liable for alleged conduct during the Duval Incident, stating that Plaintiffs will amend the Complaint to add federal parties upon expiration of the statutory review period for their FTCA notice of claim. [Doc. 1, ¶ 14; *see also* Ex. 1 to Doc. 17]

On September 1, 2020, the Court entered its Order granting the U.S. Attorney's

Office's Motion for Extension of Time for Defendant Mendoza to Respond to the Complaint, and ordered that Defendant Mendoza shall respond on or before November 2, 2020. [Doc. 22; Doc. 23] Accordingly, this Motion to Dismiss is timely filed solely on behalf of the Sheriff and County.

**II.  DISMISSAL UNDER RULE 12(B)(6).**

**A. Standard for 12(b)(6) Motion.**

   "Dismissal is proper when the complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (Quotation marks omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly, 550 U.S. 544,* 556 (2007)).  While a court may accept the factual allegations of a complaint as true, that tenet "is inapplicable to legal conclusions." *Id.* Rule 8, Fed. R. Civ. P., does not demand detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

4

**B. Section 1983 Claims against Sheriff Penzone and County Must Be Dismissed [Count I].**

Plaintiffs' Section 1983 claims [Count I] against Sheriff Penzone and County are alleged solely upon municipal liability theories; Sheriff Penzone is sued solely in his official capacity as final policymaker for MCSO.  [Doc. 1, ¶¶ 9, 10, 24;  Doc. 24]  The Complaint alleges FATE officers follow a policy, practice or custom of establishing and executing "tactical plans" to arrest a fugitive while the fugitive is located inside a vehicle, by "drawing their weapons" and employing the "highest level of force," "without regard to the minimum level of force necessary" to complete such arrest and without taking precautions for the safety of "unarmed persons," "innocent bystanders" and/ or "non-criminal associates" located inside the vehicle in physical proximity to the suspected fugitive, thereby exposing them to "extreme risk of injury or death."  [*Id.*, ¶¶ 28 – 31, 98 – 103, 116, 117, and 119.] These allegations collectively are referred below as "Plaintiffs' Alleged FATE Policy."

A municipality can face Section 1983 liability only where "'action pursuant to official municipal policy' caused [the plaintiff's] injury." *Connick v. Thompson,* 563 U.S. 51, 60 - 61  (2011) (quoting *Monell v. Dep't. of Social Serv. of N.Y.*, 436 U.S. 658, 691 (1978)).  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.*, 563 U.S. at 61.

1. ***Respondeat Superior* Liability Theories Are Not Cognizable Under Section 1983.**

To the extent that Plaintiffs are alleging *respondeat superior* liability theories against Sheriff Penzone and the County for the alleged conduct of Deputy Mendoza and/or FATE

officers during the Duval Incident, *see e.g.*, Doc. 1, ¶¶ 9 - 11, 26, 36, 38, 89, such theories are not cognizable under Section 1983.  *See Monell*, 436 U.S. at 691; *see also Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997).  Any such theories therefore must be dismissed with prejudice.

### 2. **No Specific Fact Allegations Showing Municipal Written Policy.**

The Complaint does not allege specific facts showing Sheriff Penzone or County adopted Plaintiffs' Alleged FATE Policy in written policy.  The Complaint is bereft of any fact allegations identifying specific MCSO written policy remotely along the lines of Plaintiffs' Alleged FATE Policy.  The Complaint fails to establish a municipal written policy theory of municipal liability.

### 3. **No Specific Fact Allegations Showing Municipal Custom and Practice.**

To establish a Section 1983 custom and practice claim against a municipality, the plaintiff must show a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir.1996) (quoting *Gillette v. Delmore,* 979 F.2d 1342, 1346 – 47 (9th Cir. 1992)).  The plaintiff must allege specific facts showing an alleged custom and practice "so 'persistent and widespread' that it constitutes a 'permanent and well settled [municipal] policy." *Id.*, at 918 (*quoting Monell*, 436 U.S. at 691).  A single constitutional deprivation ordinarily is insufficient to establish a longstanding custom or practice.  *See id.* ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."); *Thompson v. City of Los Angeles,* 885 F.2d

1439, 1443–44 (9th Cir.1989), *overruled on other grounds* by *Bull v. City of San Francisco*, 595 F.3d 964, 981 (9th Cir. 2010) ("Consistent with the commonly understood meaning of custom, proof of random acts or isolated events [is] insufficient to establish custom.").

The Complaint does not allege specific facts sufficient to show Sheriff Penzone or County adopted Plaintiffs' Alleged FATE Policy via custom and practice.  The Complaint does not allege specific facts showing that, during other FATE operations preceding the single Duval Incident, Deputy Mendoza/FATE officers repeatedly and consistently established and executed "tactical plans" to arrest a fugitive while the fugitive is located inside a vehicle, by "drawing their weapons" and employing the "highest level of force," "without regard to the minimum level of force necessary" to complete such arrest and without taking precautions for the safety of "unarmed persons," "innocent bystanders" and/ or "non-criminal associates" located inside the vehicle in physical proximity to the suspected fugitive, thereby exposing them to "extreme risk of injury or death."  The Complaint fails to allege specific facts showing a longstanding and widespread custom and practice of same/similar conduct on the part of Deputy Mendoza/FATE officers of sufficient duration, frequency and consistency necessary to establish such conduct is a traditional method of carrying out policy.  Accordingly, the Complaint fails to state a Section 1983 custom and practice claim against the Sheriff or the County.  *See Trevino,* 99 F.3d at 918; *Thompson,* 885 F.2d at 1443–44.

    4. **No Specific Facts Showing Municipal Policymaker Deliberate Acts/Omissions.**

"[O]nly those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability." *City of St. Louis v. Praprotnik,*

485 U.S. 112, 123 (1988) (plurality).  Whether a particular official has "final policymaking authority" is a question of *state law.  Id.* (emphasis in original).

Under Arizona law, and as recognized by Plaintiffs in the Complaint, Sheriff Penzone is the final policymaker for MCSO.  A.R.S. § 11-441.  [Doc. 1, ¶¶ 9, 24]

The Complaint does not allege specific facts showing that the Sheriff himself personally participated in, gave orders, set into motion, or knew about and knowingly refused to prevent, Deputy Mendoza's/FATE officers' unconstitutional conduct alleged to have occurred during the Duval Incident.  The Complaint does not allege specific facts which would show that Sheriff Penzone: (1) personally participated in establishing, ordering or executing the alleged "tactical plan" for Deputy Mendoza's/FATE officers' apprehension of Izaguirre, or personally knew about such "tactical plan" prior to conclusion of the Duval Incident; (2) personally knew of Duval being inside the vehicle with Izaguirre or personally knew about any alleged risk to Duval's safety relative to such "tactical plan," prior to conclusion of the Duval Incident; (3) personally was involved or ordered Deputy Mendoza's/FATE officers' alleged use of a "vehicle barricade" maneuver to stop Duval from driving Izaguirre away from the traffic stop, or personally knew about such "vehicle barricade" maneuver being used to stop Duval from driving Izaguirre away from the traffic stop, prior to the conclusion of the Duval Incident; (4) personally knew that, allegedly, no one in Duval's vehicle was armed, prior to the conclusion of the Duval Incident; (5) personally was involved or ordered Deputy Mendoza's/FATE officers' use of lethal force alleged to have caused Duval's injury and death, or personally knew about such lethal force allegedly being used upon Duval, prior to the conclusion of the Duval Incident; or (6)

personally knew about Deputy Mendoza's/FATE officers' alleged unconstitutional use of the "vehicle barricade" maneuver to stop Duval's vehicle and their alleged unconstitutional use of lethal force in shooting and injuring Duval, but failed to prevent such unconstitutional conduct, knowing or having reason to know such conduct would cause constitutional injury to Duval/Plaintiffs.

Nor does the Complaint allege specific facts showing Sheriff Penzone delegated his final policymaking authority over MCSO use of force policy to Deputy Mendoza/FATE officers.  Nothing in the Complaint shows that Deputy Mendoza/FATE officers were authorized to establish and follow their own use of force policy, wholly unconstrained by MCSO use of force policy established by the Sheriff.  *See Praprotnik*, 485 U.S. at 127. Mere delegation of discretion to act within the confines of final policy is not equivalent to delegation of final policymaking authority.  *See id.* at 126 ("If the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from *respondeat superior* liability."); *Christie v. Iopa*, 176 F.3d 1231, 1235 – 1238 (9th Cir. 1999) (county prosecutor set final charging policy; providing the line prosecutor with the discretion whether to charge within the confines of final charging policy did not constitute delegation of final policymaking authority); *Trevino,* 99 F.3d at 920 ("The police officers who shot Bahena were not 'officials with final policy-making authority' and they were not ordered to shoot by the police chief, the City Council or anyone else possessing final policy-making authority.").  *See also Fiorenzo v. Nolan,* 965 F.2d 348, 351 (7th Cir.1992) ("[A] municipality is not liable merely because the official who inflicted the alleged constitutional injury had the discretion to act on its behalf; rather, the official in

question must possess final authority to establish municipal policy with respect to the challenged action.").

The Complaint also does not allege facts sufficient to establish a "ratification theory" of municipal liability.  To establish a "ratification theory" for Section 1983 municipal liability, a plaintiff must show that the "authorized policymakers approve a subordinate's decision and the basis for it." *Praprotnik,* 485 U.S. at 1.  "A policymaker's knowledge of an unconstitutional act does not, by itself, constitute ratification.  Instead, a plaintiff must prove that the policymaker approved of the subordinate's act.  For example, it is well-settled that a policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval." *Christie*, 176 F.3d at 1239 – 1240 (citing cases).  In *Lassiter v. City of Bremerton*, the Ninth Circuit affirmed the district court's dismissal of Section 1983 claims against the police chief and city for excessive force.  *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1055 (9th Cir. 2009).  The police chief in *Lassiter* decided not to pursue an internal investigation based on his conclusion that the officers had not violated department policy. He concluded that the officers had not engaged in the allegedly problematic conduct; thus, his single decision not to pursue further investigation was not an affirmative choice to ratify the alleged conduct. *Id.*; *see also Garza v. City of Los Angeles*, 2017 WL 5635460, at *7–8 (C.D. Cal. June 20, 2017) (holding that a department's conclusion that claims of unauthorized force were unfounded could not constitute ratification for *Monell* purposes and that "[a]ny other finding would open up municipal defendants to *Monell* liability any time they dismissed a complaint against one of their officers because of factual determinations made by internal investigations").  The Complaint alleges that Sheriff

Penzone and County "clear[ed] the Task Force's shooting of Melonee Duval and claim[ed] the Task Force's use of deadly force was justified" and "Sheriff Penzone and Maricopa failed to discipline the Task Force for their killing of Melonee Duval." [Doc. 1, ¶¶ 123, 124]. The Complaint does not specifically identify Plaintiffs' alleged information/record sources for these allegations. But even assuming these allegations are true for purposes of this Motion to Dismiss, they fail to establish that Sheriff Penzone or County knew of the alleged constitutional violation (not just the fact of an officer-involved shooting) and made a "conscious, affirmative choice" to sanction the conduct, anyway. *Gillette*, 979 F.2d at 1347. To the contrary, these allegations show that Sheriff Penzone and County found that Deputy Mendoza/FATE officers were <u>justified</u> in using deadly force during the Duval Incident, that is, they found the Deputy Mendoza/FATE officers used deadly force in a <u>lawful</u> manner, so they decided internal discipline was not warranted. Such alleged findings and decisions do not constitute deliberate ratification of known unconstitutional conduct. *See* cases cited *supra*. The Complaint fails to state a claim for municipal liability under a "ratification theory."

To establish a "failure to train" theory of municipal liability under Section 1983, a plaintiff "must show that (1) he was deprived of a constitutional right, (2) the [municipality] had a training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons' with whom [its police officers] are likely to come into contact"; and (3) his constitutional injury would have been avoided had the [municipality] properly trained those officers." *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor

disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410; *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 – 392 (1989). The plaintiff must show that a municipality had "actual or constructive notice that a particular omission in their training program cause[d] [municipal] employees to violate citizens' constitutional rights" and, nevertheless, "disregarded [that] known or obvious consequence." *Connick*, 563 U.S. at 61. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' "to demonstrate deliberate indifference for purposes of failure to train." *Id*. at 63. "Mere proof of a single incident of errant behavior is a clearly insufficient basis for imposing liability on the County." *Merritt v. Cnty. of Los Angeles,* 875 F.2d 765, 770 (9th Cir. 1989).

The Complaint does not expressly assert a "failure to train" municipal liability claim. It makes a conclusory allegation that "Defendants' policy, practice or custom . . . shows deliberate indifference or extreme recklessness for the safety and wellbeing of those affiliated with the suspect, such as Melonee Duval." [Doc. 1, ¶ 118] This allegation standing alone fails *Iqbal's* pleading standards. While the Complaint alleges that FATE "operates according to the training . . . of drawing their weapons, including their high-powered automated assault rifles, at unarmed persons and/or innocent bystanders, who pose little to no risk of serious physical injury to the Task Force operators or the public" [Doc. 1, ¶ 29], it does not allege specific facts showing Deputy Mendoza/FATE officers engaged in such alleged conduct during any FATE operation, other than the single Duval Incident. In failing to allege specific facts showing a past pattern of Deputy Mendoza/FATE officers similarly "drawing their weapons, including their high-powered automated assault rifles, at

unarmed persons and/or innocent bystanders, who pose little to no risk of serious physical injury to the Task Force operators or the public" during prior FATE operations, the Complaint fails to establish that Sheriff Penzone or County were on notice of a particular deficiency in MCSO use of force training which allegedly would cause Deputy Mendoza/FATE officers to violate constitutional rights if not remedied/addressed.  Because the Complaint fails to allege facts sufficient to show that Sheriff or County were "deliberately indifferent" to a known or obvious need for more or different use of force training for Deputy Mendoza/FATE officers, which led to Plaintiffs' alleged constitutional injuries, the Complaint fails to state a "failure to train" theory of municipal liability.

Based on the foregoing, Plaintiffs' Section 1983 claims asserted against Sheriff Penzone and County must be dismissed [Count I].

**C. State Law Vicarious Liability Claims Asserted Against County Must Be Dismissed with Prejudice [Count II and Count IV].**

In Arizona, a county is not vicariously liable for the conduct of a sheriff or the sheriff's deputies in exercising statutory law enforcement duties under A.R.S. § 11- 441(A) to "[p]reserve the peace," "arrest . . . all persons who attempt to commit or who have committed a public offense," and "[p]revent and suppress all . . . breaches of the peace," among other duties.  *See Fridena v. Maricopa Cnty.*, 18 Ariz.App. 527, 530 - 531, 504 P.2d 58, 61 – 62 (Ariz. Ct. App. 1972).

The Complaint alleges that the County is vicariously liable under state law wrongful death and negligence causes of action (Counts II and IV), for the alleged conduct of Deputy Mendoza and FATE officers in exercising statutory law enforcement duties in connection with the Duval Incident, including allegedly establishing and executing a "tactical plan" to

apprehend a fugitive (Izaguirre) per an arrest warrant, conducting an alleged traffic stop of Duval's vehicle in which Izaguirre was a passenger, alleged seizure of Duval, and alleged use of deadly force upon Duval. [Doc. 1, ¶¶ 10, 11, 36, 89, 130 – 135, 142 – 156] Because these vicarious liability claims are not cognizable against the County, they must be dismissed with prejudice as to the County. *See Fridena*, 18 Ariz.App. at 530 – 531, 504 P.2d at 61 - 62*; see also Kloberdanz v. Arpaio*, 2014 WL 309078, at *4 (D. Ariz. Jan. 28, 2014); *Dimmig v. Pima Cty.*, 2009 WL 3465744 at *1 (Ariz. Ct. App. Oct. 27, 2009).

**D. State Law Negligence Theories Allegedly Arising Out of Deputy Mendoza's/FATE Officer's Alleged Intentional Acts Must Be Dismissed with Prejudice [Count II and Count IV].**

In Arizona, a plaintiff cannot base a negligence claim upon a law enforcement officer's intentional acts such as effectuating a stop/seizure or applying force. *Ryan v. Napier*, 245 Ariz. 54, 60 - 61, 425 P.3d 230, 236-237 (2018). Any negligence claim must be based upon conduct independent of the officer's intentional acts. *Id*. at 238. *See also Liberti v. City of Scottsdale*, 2020 WL 3034623 at * 2 (9th Cir. June 5, 2020); *Leibel v. City of Buckeye*, 364 F.Supp.3d 1027, 1044 (D. Ariz. 2019).

The Complaint asserts state law negligence theories arising out of Deputy Mendoza's/FATE officers' alleged intentional establishment and execution of a "tactical plan" to apprehend a fugitive (Izaguirre) per an arrest warrant, intentional conduct of an alleged traffic stop of Duval's vehicle in which Izaguirre was a passenger, alleged intentional seizure of Duval, and alleged intentional use of deadly force upon Duval, asserted in state law wrongful death and negligence claims against Sheriff Penzone and County. [Doc. 1, ¶¶ 42 – 51, 62 – 64, 66 – 67, 80, 130 – 135, 144 - 156] Because such

negligence theories are not cognizable under *Napier, supra*, Plaintiffs' state law wrongful death and negligence claims based upon them must be dismissed with prejudice [Count II and Count IV].

### E. State Law Negligent Supervision/Negligent Training Theories Asserted Against the County Must Be Dismissed with Prejudice [Counts II and IV].

Under A.R.S. § 11-409, the Sheriff is the sole appointing authority for MCSO Deputies.  The County does not have the statutory authority to hire, supervise, terminate, or discipline MCSO Deputies; only the Sheriff possesses such authority.  *See Houndshell v. White*, 220 Ariz. 1, 4 - 5, 202 P.3d 466, 469 - 470 (Ariz. Ct. App. 2008).   Because the County does not have such legal authority, the County does not have a legal duty to supervise or train MCSO Deputies.

*Flanders v. Maricopa County*, 203 Ariz. 368, 54 P.3d 837 (Ariz. Ct. App. 2002), does not support any contrary argument.  The holding in that case concerned the County's alleged responsibility for the Sheriff's jail policies under a Section 1983 municipal policy theory, not the County's alleged responsibility for supervising or training the Sheriff's employees under state law wrongful death or negligence theories.  Flanders did not hold that the County has any authority over the Sheriff's employees in executing their statutory peace-keeping duties. *See, e.g., Kloberdanz*, 2014 WL 309078 at ** 4 – 5.

Because the County does not have a legal duty to supervise or train MCSO Deputies, Plaintiffs' negligent supervision and negligent training theories asserted in state law wrongful death and negligence claims [Count II and Count IV, Doc. 1, ¶¶ 130 – 135, 145 – 156] must be dismissed with prejudice as to the County.

### III.   CONCLUSION.

For the foregoing reasons, the Court should grant this Motion to Dismiss and enter its Order (1) dismissing Section 1983 claims asserted against Sheriff Penzone and Maricopa County [Count I]; (2) dismissing with prejudice state law vicarious liability claims against Maricopa County [Count II and Count IV]; (3) dismissing with prejudice state law negligence theories arising out of Deputy Mendoza's/FATE officers' alleged intentional acts, asserted in state law wrongful death and negligence claims against Sheriff Penzone and Maricopa County [Count II and Count IV]; and (4) dismissing with prejudice state law negligent supervision and negligent training theories asserted in state law wrongful death and negligence claims against Maricopa County [Count II and Count IV].

Granting this Motion to Dismiss would eliminate all claims and requests for relief against County.  Also, granting this Motion to Dismiss would eliminate all claims and requests for relief against Sheriff Penzone, other than (1) Plaintiffs' state law vicarious liability claim for alleged wrongful death arising out of Deputy Duval's/FATE officers' alleged intentional acts [Count II]; and (2) Plaintiffs' state law negligence claim for alleged negligent supervision and negligent training [Count IV].

**RESPECTFULLY SUBMITTED** this 2nd day of September 2020.

ALLISTER ADEL
MARICOPA COUNTY ATTORNEY

By /s/ Ann Thompson Uglietta
ANN THOMPSON UGLIETTA
JONATHAN SIMON
Deputy County Attorneys
*Attorneys for Defendants*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 2, 2020, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Honorable John J. Tuchi
United States District Court
Sandra Day O'Connor U.S. Courthouse
401 West Washington Street, SPC 83
Phoenix, Arizona 85003

Honorable Michelle H. Burns
Magistrate Judge
United States District Court
Sandra Day O'Connor U. S. Courthouse
401 West Washington Street
Phoenix, Arizona 85003

Scott A. Ambrose
Andrew L. Gartman
BURG SIMPSON ELDREDGE HERSH & JARDINE
2390 E Camelback Rd, Ste 403
Phoenix AZ 85012
sambrose@burgsimpson.com
agatman@burgsimpson.com
azcourt@burgsimpson.com
*Attorneys for Plaintiff Estate and Beneficiaries*

Shiloh K. Hoggard
LAW OFFICE OF SHILOH K. HOGGARD, PLLC
850 Cove Parkway, Ste C
Cottonwood AZ 86326
shiloh@hoggard_law.com
*Attorney for Plaintiff Billie Giordano*

/s/ *S Rojas*

S:\CIVIL\CIV\Matters\CJ\2019\Estate of Melonee Duval v Penzone CJ19-0191\Pleadings\Word\09022020 Final Def Penzone County Mt to Dismiss.docx

17