Scott A. Ambrose, Esq. (012614)
Andrew L. Gartman, Esq. (031718)
**BURG SIMPSON ELDREDGE HERSH & JARDINE, PC**
2390 East Camelback Road, Suite 403
Phoenix, Arizona  85012
Telephone:  (602) 777-7000; Fax:  (602) 777-7008
SAMBROSE@BURGSIMPSON.COM
AGARTMAN@BURGSIMPSON.COM
AZCOURT@BURGSIMPSON.COM
*Attorneys for Plaintiff estate and beneficiaries*

Shiloh K. Hoggard, Esq. (023271)
**LAW OFFICE OF SHILOH K. HOGGARD, PLLC**
850 Cove Parkway, Suite C
Cottonwood, Arizona 86326
Telephone:  (928) 649-3400; Fax:  (928) 772-8695
SHILOH@HOGGARD-LAW.COM
*Attorney for Plaintiff Billie Giordano*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA - PHOENIX DIVISION

| | |
|---|---|
| **The Estate of Melonee Duval**, by and through its personal representative, **Issac Navarrette; Issac Navarrette,** individually and on behalf of all persons with a statutory right of recovery for the wrongful death of Melonee Duval; **Adriyanna Navarrette**, an individual; **Jaylen Klockenga**, an individual; **Billie Giordano**, an individual, | No.  CV20-01206-PHX-JJT (MHB) |
| *Plaintiffs*, | **FIRST AMENDED COMPLAINT** |
| vs. | JURY TRIAL DEMANDED |
| **Paul Penzone**, in his official capacity as Sheriff of Maricopa County; **Maricopa County**, a political subdivision of the State of Arizona; **Sean Mendoza**, individually and in his capacity as a deputy of the Maricopa County Sheriff's Office, | |
| *Defendants*. | |

Pursuant to Rule 15(a)(1)(B), Federal Rules of Civil Procedure, Plaintiffs submit this First Amended Complaint. Plaintiffs for their complaint against Defendants, hereby allege as follows.

## NATURE OF ACTION

1.     This is a complaint for damages regarding police misconduct and the excessive use of deadly force. Defendants are governmental law enforcement officers, municipalities and agencies that were responsible for shooting and killing Melonee Duval.

2.     On June 19, 2019, Defendants repeatedly shot Melonee Duval in the head and body. Just prior to the shooting, Melonee Duval was driving her motor vehicle in a safe and prudent manner. Defendants used a violent police tactic in which police suddenly and without warning box in a subject vehicle from all four sides so the subject vehicle and its occupants are seized and immobilized. Defendants then rammed Ms. Duval's vehicle with their own. Defendants approached Ms. Duval's vehicle with weapons drawn and pointed at Ms. Duval. Defendants sought to arrest her passenger; this was the reason Defendants surrounded her vehicle with their vehicles. Ms. Duval posed no threat to Defendants and nobody in her car was armed with a weapon of any kind. Defendants barricaded Ms. Duval's car with their own vehicles. Defendants' vehicles were unmarked. Defendants did not identify themselves as law enforcement. Defendants surrounded the Duval vehicle with weapons loaded and pointing at Ms. Duval. Without justification, in an unlawful, unjustified abuse of deadly and excessive force, and without a reasonable basis for doing so, Defendants began shooting firearms into Ms. Duval's vehicle and directly at Ms. Duval. They riddled Ms. Duval's windshield with bullets. As a result, Ms.

Duval was shot numerous times in the head and body. She required surgical intervention and hospitalization. She succumbed to her gunshot wounds to the head and died on June 29, 2019. Plaintiffs are the Estate of Melonee Duval and her surviving heirs, who come to this Court seeking redress for the Constitutional violations of Ms. Duval, their own Constitutional violations, and for the wrongful death of Melonee Duval.

**PARTIES**

3.      Melonee Duval, at the time of her death on June 29, 2019, was a 40-year-old resident of Maricopa County:



4.      Pursuant to A.R.S. §12-612, Issac Navarrette is the proper party to bring this action on behalf of all statutory beneficiaries of Melonee Duval.

5.      Issac Navarrette, is the eldest, surviving son of Melonee Duval and the appointed Personal Representative of the Estate of Melonee Duval.

6.      The Estate of Melonee Duval, brings an action against Defendants for the death of Melonee Duval including claims regarding violations to her Constitutional rights.

7.      With respect to the Arizona state law claim for wrongful death alleged below, Plaintiff Issac Navarrette brings this action on behalf of himself and all statutory beneficiaries of Melonee Duval pursuant to A.R.S. §12-612.

8.      Pursuant to A.R.S. §12-612 certain statutory beneficiaries may bring a claim

- 3 -

for wrongful death of a family member. The statutory beneficiaries of Melonee Duval include the following individuals: Billie Giordano, as the natural mother of Melonee Duval; Issac Navarrette, as the eldest son of Melonee Duval; Adriyanna Navarrette, as the daughter of Melonee Duval; and Jaylen Klockenga, as the youngest son of Melonee Duval.

9.     Plaintiffs Billie Giordano, Issac Navarette, Adriyanna Navarette, Jaylen Klockenga bring this lawsuit in their individual capacity for their respective claims of Constitutional violations for interference and deprivation of familial relationships alleged in more detail below.

10.     Defendant Paul Penzone is the Sheriff of Maricopa County and the chief policymaker of Maricopa County Sheriff's Office. With respect to Plaintiffs' claims under Arizona State law, he is liable for the acts and omissions of his employees, deputies and agents under the doctrine of *respondeat superior.* He is hereinafter referred to as Defendant "Sheriff Penzone" or "Defendant Penzone." He is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. §1983.

11.     Defendant Maricopa County is a political subdivision of the State of Arizona, organized and existing under the laws of the State of Arizona. Maricopa County is hereinafter referred to as Defendant "Maricopa County" or "Maricopa." Maricopa County is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. §1983.

12.     Defendants Penzone and Maricopa County operated and acted herein through the Maricopa County Sheriff's Office (MCSO), a non-jural entity, providing law enforcement services throughout Maricopa County, State of Arizona.

13.     Defendant Sean Mendoza is named herein in his individual and official

capacity, as a sworn law enforcement deputy with the MCSO, the County, for Sheriff Penzone, and as a member of a Task Force described below. He is hereinafter referred to as "Defendant Mendoza". Based on information and belief, Defendant Mendoza took part in, and is, at least partly, responsible for the wrongful shooting of Melonee Duval as alleged herein. He was employed by Defendants Sheriff Penzone and Maricopa County acting within the course and scope of his employment, and under color of state law. He is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. §1983.

14. Based on information and belief, Defendant Sean Mendoza, at all times alleged herein, and in addition to him being a law enforcement officer with the other named defendants herein, was also acting on behalf of, and as an agent of, the United States Government, as a deputized agent of the United States Marshals Service and/or the Federal Bureau of Investigations.

15. Based on information and belief, United States law enforcement agents, including agents of the United States Marshals Service and/or Federal Bureau of Investigations (hereafter "federal agents") were involved in, participated in, took part in, and are jointly and severally responsible for the events described herein to the same extent as the named defendants herein, and are liable to Plaintiffs for the misconduct alleged herein. Plaintiffs anticipate amending this Complaint to include the appropriate federal agents, and the United States Government, as defendants upon expiration of the federal notice of claim procedure. Federal agents and officials, who are not yet named herein, conspired, or acted in concert with Defendants Maricopa County, Sheriff Penzone and Defendant Mendoza to commit the wrongful acts alleged herein.

## JURISDICTION & VENUE

16.     This lawsuit claims violations of the United States Constitution, including claims of excessive deadly force in violation of the Fourth Amendment's prohibition against unreasonable seizures.  Accordingly, this Court has jurisdiction of this matter as the Constitution vests federal courts with authority to hear cases arising under the Constitution or the laws of the United States. U.S. Constitution art III, §2.

17.     This court is vested with subject-matter jurisdiction as Plaintiffs' claims involve questions of federal law.  This district court has original jurisdiction of this civil action pursuant to 28 U.S.C. §1331 as it arises under the Constitution, laws, or treatises of the United States.

18.     In addition to the claims involving questions of federal law, this lawsuit also claims compensable violations of Arizona state law arising out of the same events and conduct that give rise to the federal claims.  These state law claims are substantially related to the original claims involving questions of federal law.  Pursuant to 28 U.S.C. §1367 this court has supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

19.     The amount in controversy exceeds the jurisdictional limitations of this Court.

20.     Venue is proper in this district pursuant to 28 U.S.C. §1391, et seq., because a substantial part of the events giving rise to this claim occurred in Arizona and in this district.

21.     Defendants are subject to the Court's personal jurisdiction because at all

times relevant hereto Defendants conduct as alleged herein was in the State of Arizona. Defendants have sufficient minimum contacts with Arizona such that exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.

22.     Regarding Plaintiffs' claims under Arizona law, Plaintiffs served a timely notice of claim, pursuant to A.R.S. §12-821.01 upon Defendants. The notice of claim complied in all respects with the applicable statute, was timely served and is deemed denied by operation of law.

23.     The events that form the basis of this Complaint occurred on or about June 19, 2019, near the intersection of Grand Avenue (U.S. 60) and Thompson Ranch Road, in El Mirage, Maricopa County, Arizona.

24.     A trial by jury is requested by Plaintiffs on all issues.

### FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

25.     Plaintiffs reallege and incorporate by reference all preceding Paragraphs of this Complaint, as though expressly set forth in full herein.

26.     Defendants Maricopa County and Sheriff Penzone maintain virtually exclusive custody and control of the evidence and investigative materials surrounding the shooting of Melonee Duval, but have refused and continue to refuse Plaintiffs' request for the production or disclosure of such evidence, which obstructs Plaintiffs from providing the true name of each law enforcement personnel responsible for the shooting and death of Melonee Duval at the time this Complaint was due.

27.     Defendant Penzone is the elected Sheriff of Maricopa County, and the chief

policymaker of MCSO.

28. After being elected Sheriff of Maricopa County, Defendant Sheriff Penzone "spearheaded" the creation of a law enforcement task force, known as the Fugitive Apprehension Task Force, hereinafter referred to as the "Task Force"

29. The Task Force was allegedly created to apprehend suspected criminals in Maricopa County communities as part of law enforcement activities for Defendants Maricopa County and Penzone. Defendants Penzone and Maricopa County run, operate and are responsible for the Task Force. Task Force operators and agents were acting on behalf of the named Defendants herein who are responsible for the Task Force operations through doctrines of agency, employment and *respondeat superior.*

30. The Task Force includes law enforcement officers from MCSO, Sheriff Penzone, Maricopa County, and the United States Marshals Service and the Federal Bureau of Investigations.

31. Regardless of any federal agency deputation that may exist, the Task Force personnel are subject to the laws, regulations, policies, and personnel rules applicable to their respective agencies.

32. The Task Force members are required to follow their own agencies' policies and practices concerning firearms discharge and the use of force including deadly force.

33. Defendants' Task Force conducts "operations" or missions throughout Maricopa County, using unmarked vehicles, high-powered weaponry, including automatic assault rifles, such as M4 or M16; full tactical gear, such as helmets and body armor, in their "operations" or missions.

34.     Defendants' Task Force follows a policy, practice or custom of employing a high degree of force without regard to the minimum level of force necessary to complete its "operation" or mission, or with precautions for innocent bystanders in the proximity of their suspect.

35.     Defendants' Task Force operates according to the training, practice or custom of drawing their weapons, including their high-powered automatic assault rifles, at unarmed persons and/or innocent bystanders, who pose little to no risk of serious physical injury to the Task Force operators or the public.

36.     Defendants' Task Force also has a policy, practice or custom of executing its "operations" or missions when its intended suspect is in a vehicle.

37.     Defendants' conducts these "operations" or missions without minimizing the risk to innocent bystanders or non-criminal associates of their target.

38.     All Defendants were participating in the Task Force.

39.     In May 2019, an arrest warrant was issued for Ernesto Izaguirre, a non-party hereto.

40.     Defendants' Task Force made no prior attempts to apprehend Izaguirre before June 19, 2019.

41.     On the evening of June 19, 2019, Melonee Duval was driving her red Dodge pickup in El Mirage, Arizona, with two passengers: a minor female, age 16, in the back seat, and Ernesto Izaguirre in the front seat.

42.     Defendants were not aware of any specific exigent or emergent circumstance that justified seizing not only Ernesto Izaguirre, but also Melonee Duval, or the other

passenger as well.

43. At all relevant times on June 19, 2019, Defendants were conducting surveillance of Ernesto Izaguirre and were aware of the fact that Melonee Duval was driving her vehicle with the passengers listed in the preceding paragraph.

44. At all relevant times, the members of Defendants Task Force were acting under color of law and within the course and scope of their employment with Defendants, Penzone, the County and/or MCSO. Defendant Mendoza was a member of the Task Force.

45. At all relevant times, the members of Defendants Task Force were acting jointly and in concert with each other or pursuant to a common design for the purpose of participating in the Task Force.

46. The events of June 19, 2019, as alleged herein, were conducted by Defendants, and each of them, individually, jointly, or as a cooperative effort constituting an agency with other named Defendants. Individual persons participating in the alleged events of June 19, 2019 were acting within the course of and scope of their employment with the other named defendants.

47. On June 19, 2019, Melonee Duval did not present a serious risk of physical injury to the public, to law enforcement personnel, nor to the occupants of her vehicle.

48. The Defendants were not aware of any information that would lead a reasonable officer to believe that Melonee Duval had committed any crimes.

49. The Defendants were not aware of any facts or information that would lead a reasonable officer to believe that it was necessary to use force of any kind against Melonee Duval.

50. Neither Melonee Duval nor the occupants of her vehicle posed any immediate threat to the Defendants or others.

51. Neither Melonee Duval, nor the occupants of her vehicle ever resisted the police or made any effort to evade the police or flee.

52. Melonee Duval was never the subject to be apprehended and there was no cause to apprehend or seize Melonee Duval.

53. In attempting to apprehend Ernesto Izaguirre, Defendants used several high risk maneuvers and dangerous tactics known to Defendants to pose a high risk of injury to others.

54. Despite knowledge of the risks to Melonee Duval, the Defendants made a conscious decision to ignore those risks.

55. The Defendants made a conscious, knowing, and deliberate decision to attempt to seize the occupants of Ms. Duval's pickup by the use of force utilizing a high risk maneuver of boxing in and ramming a suspect's vehicle.

56. Defendants made a conscious, knowing, and deliberate decision to seize the occupants of the Duval pickup using tactics that increased the risks to Melonee Duval

57. Defendants decided to seize all three occupants of the Duval pickup with a boxing in and ramming tactic which is known to be dangerous.

…

58. A boxing-in tactic is when Defendants suddenly and without warning box in a subject vehicle from all four sides, so that the subject vehicle and its occupants are seized and immobilized.



59. In executing said tactics, Defendants position unmarked vehicles in front of, in back of, and the sides of a subject vehicle. Defendants have one of their vehicles ram the subject vehicle.

60. Defendants box in the subject vehicle on each side such that the subject vehicle cannot flee and the occupants are surrounded.

61. Defendants knew that a box in tactic and resulting ramming is an intentional car crash.

62. Defendants knew that boxing in and ramming tactics should not be attempted on vehicles containing occupants who are not suspected of any crime, and when an innocent, non-suspect is driving the vehicle.

63. The Defendants knew that the forceful and violent nature of a boxing in and ramming tactic results in chaos and confusion.

64. The Defendants knew that the forceful and violent nature of boxing in and ramming a vehicle increases the likelihood that police will use deadly force.

65. Defendants decided and agreed to seize all three occupants of Ms. Duval's pick up using a boxing in and ramming tactic.

66. Defendants knew the boxing in and ramming tactic would result in trapping Melonee Duval in the pickup.

67. Defendants knew the boxing in and ramming tactic would result in violent vehicle collisions.

68. Defendants knew the boxing in and ramming tactic would also result in a chaotic and dynamic scene.

69. Defendants knew that there was no immediate exigency that justified trapping Melonee Duval and the other passengers in the pickup.

70. Defendants knew that they could wait until Ernesto Izaguire was alone before attempting to seize or arrest him.

71. Defendants had the ability to call off the boxing in and ramming tactic or to intervene to prevent it from occurring.

72. Defendants callously and recklessly disregarded the risks that their actions posed to Melonee Duval when they decided to participate in high risk maneuvers.

73. Defendants failed to create an agreed upon plan regarding safely addressing the occupants of Ms. Duval's pickup once the boxing in and ramming tactic was initiated.

74. Defendants failed to create an agreed upon plan regarding communications between officers and the occupants of the Duval pickup once the boxing in and ramming tactic was initiated.

75. Defendants failed to create an agreed upon plan regarding communications between the officers once the boxing in and ramming tactic was initiated.

76. Defendants failed to create an agreed upon plan regarding use of force once the boxing in and ramming tactic was initiated.

77. Defendants also had the ability to abort the boxing in and ramming tactic.

78. Defendant made a conscious decision to initiate high risk maneuvers including boxing in and ramming tactics.

79. Defendant initiated boxing in and ramming tactic when they surrounded Ms. Duval's pickup and rammed it from behind.

80. By surrounding and slamming into Ms. Duval's pickup, Defendants seized the occupants of the pickup, including Melonee Duval

81. Defendants initiated high risk maneuvers, including a box-in and ramming by surrounding Ms. Duval's pickup with their own vehicles and striking Ms. Duval's pick up with their own.

82. Six police vehicles surrounded and immobilized the Duval pickup seizing its occupants, including Melonee Duval.

83. The police vehicles made it impossible for the Duval pickup to escape or to be used as a weapon.

84.     In carrying out the boxing in and ramming tactic, Defendants were in unmarked vehicles and were not recognizable as police officers.

85.     Within seconds of the boxing in and ramming tactic, shooting by the Defendants began.

86.     Ernesto Izaguirre did not have a firearm.

87.     Melonee Duval did not have a firearm.

88.     The female minor did not have a firearm.

89.     Ernesto Izaguirre did not make any threatening movements.

90.     Melonee Duval did not make any threatening movements.

91.     The female minor did not make any threatening movements.

92.     Ernesto Izaguirre did not pose a threat to any police officers or others.

93.     Melonee Duval did not pose a threat to any police officers or others.

94.     The female minor did not pose a threat to any police officers or others.

95.     Ernesto Izaguirre was "contained" in the Duval pickup.

96.     The female minor was "contained" in the Duval pickup.

97.     Melonee Duval was "contained" in the Duval pickup.

98.     Immediately after the boxing in and ramming tactic was executed, Defendant Mendoza took a position adjacent to the Duval pickup.

99.     Defendant Mendoza knew the Duval pickup had been immobilized and contained.

100.    Defendant Mendoza was armed with a high powered firearm.

101. Defendant Mendoza never saw a gun, or weapon, or any other threat that justified firing lethal rounds into the Duval pickup.

102. Defendant Mendoza fired lethal rounds into the Duval pickup without provocation.

103. Defendant Mendoza had no justification for shooting into the Duval pickup.

104. Other officers, whose identities are not currently known also shot into the Duval pickup without justification.

105. Defendants began shooting into the Duval pickup before any of the officers at the scene had identified themselves as police and without any warning.

106. At the time Defendants fired into the Duval pickup, Defendants had not yet given commands or warnings to the occupants of the vehicle.

107. Defendant Mendoza and the other officers at the scene never saw a gun, or weapon, or any other threat that justified using deadly force against the occupants of the Duval pickup.

108. Defendant did not have any reasonably trustworthy information to suggest that Melonee Duval had committed any crime.

109. Defendant did not have any reasonably trustworthy information to believe that Melonee Duval was attempting to escape, evade, or avoid arrest.

110. Melonee Duval did not do anything that threatened Defendant Mendoza or any other officer.

111. Defendants knew that Melonee Duval was driving the Duval pickup.

112.     Defendants aimed their firearms at the windshield or driver side window of the Duval pickup, where they knew Melonee Duval was sitting.

113.     Defendants fired several rounds at the driver side window of the Duval pickup, where they knew that Melonee Duval was sitting.



114.     Defendants shot Melonee Duval in the head.

115.     After the shooting, Melonee Duval was still alive and barely breathing.

116.     Melonee Duval was transported to a hospital by paramedics.

117.     Melonee Duval experienced horrific pain, suffering and indignities due to this wrongful shooting.



118.    Melonee Duval died on June 29, 2019, from the gunshot wounds inflicted by Defendants.

119.    Defendants Penzone and Maricopa County are responsible for training and supervising their police officers regarding the use of force, including deadly force.

120.    Defendants Penzone and Maricopa County failed to properly train and supervise their police officers regarding the use of force.

121.    Defendants Penzone and Maricopa County have a policy, custom, or practice of training officers to "escalate" situations. That is, to use more force than is reasonably necessary or appropriate to respond to situations.

122.    Defendants Penzone and Maricopa County knew that their policy, custom, or practice of training officers to "escalate" situations results in unreasonable uses of force.

123.    Defendants Penzone and Maricopa County's policy, custom, or practice of training officers to "escalate" situations increases the incidence of uses of force, including the incidence of deadly force.

124.    Defendants Penzone and Maricopa County have a policy, custom, or practice of delaying and slowing down administrative investigations of shootings.

125.    The purpose of Defendants Penzone and Maricopa County's policy or practice of delaying and slowing down administrative investigations of police shootings is to prevent the public and the victims of police shootings from learning about the real facts involved in the shootings.

126.    The purpose of Defendants Penzone and Maricopa County's policy, custom, or practice of delaying and slowing down administrative investigations of police shootings

is to prevent the victims of police shootings from bringing lawsuits against Defendants Penzone and Maricopa County and its employees related to police shootings.

127. Defendants Penzone and Maricopa County's policy, custom, or practice of delaying and slowing down administrative investigations of shootings and other uses of force encourages the Defendants Penzone and Maricopa County officers to use deadly force when it is not reasonable.

128. Through its policies, customs, and practices, Defendants Penzone and Maricopa County created a culture of impunity regarding police uses of force, including deadly force.

129. Defendants Penzone and Maricopa County have a policy, custom, or practice of utilizing boxing in and ramming tactics in which innocent civilians such as Melonee Duval are passengers in the target vehicle.

130. Defendants Penzone and Maricopa County know that its policy, custom, or practice of utilizing boxing in and ramming tactics in situations in which innocent civilians are passengers in the target vehicle puts such civilians at serious risk of death or bodily injury.

131. Defendants Penzone and Maricopa County have failed to adopt and promulgate a written policy regarding the need to protect innocent civilians during boxing in and ramming tactics, and to limit such assaults against vehicles containing innocent civilians.

132. Defendants Penzone and Maricopa County knew that vehicle boxing in and ramming tactics are violent seizures and uses of force.

133.    Defendants Penzone and Maricopa County knew that vehicle boxing in and ramming tactics often result in serious injuries to the occupants of vehicles.

134.    Defendants Penzone and Maricopa County knew that because of the dangers posed to members of the public, including the occupants of vehicles seized using the vehicle boxing in and ramming tactics, there was an obvious need to develop policies and training regarding the use of the tactic.

135.    Despite knowledge of the obvious need for policies and training regarding vehicle boxing in and ramming tactics, Defendants Penzone and Maricopa County failed to develop policies regarding the use of said dangerous tactics.

136.    Despite knowledge of the obvious need for policies and training regarding vehicle boxing in and ramming tactics, Defendants Penzone and Maricopa County failed to develop policies to protect non-suspects during said tactics, including policies that would have prohibited the use of boxing in and ramming tactics when cars were occupied by passengers who were not suspected of any crime.

137.    Defendants Penzone and Maricopa County are responsible for the training and supervision of their police officers, including training regarding searches, seizures, and uses of force.

138.    Defendants Penzone and Maricopa County have a policy, custom, or practice of utilizing boxing in and ramming tactics in situations in which innocent civilians, such as Melonee Duval, are passengers in the target vehicle.

139.    Defendants Penzone and Maricopa County know that their policy, custom, or practice of utilizing boxing in and ramming tactics in situations in which innocent

civilians are passengers in the target vehicle puts such civilians at serious risk of death or bodily injury.

140. Defendants Penzone and Maricopa County have failed to adopt and promulgate a written policy regarding the need to protect innocent civilians during boxing in and ramming tactics, and to limit such assaults against vehicles containing innocent civilians.

141. Defendants Penzone and Maricopa County maintained long lasting and widespread policies, customs and practices, described above, that were deliberately indifferent to the safety of the public with whom they come in contact with, including Melonee Duval.

## CLAIMS BROUGHT UNDER ARIZONA STATE LAW

### COUNT ONE
### Wrongful Death
**(Against Paul Penzone in his official capacity, Maricopa County and Defendant Mendoza, and made by the surviving parent and children of Melonee Duval through their statutory representative)**

142. The foregoing paragraphs are incorporated as if fully set forth herein.

143. Defendants Penzone, Mendoza and Maricopa County owe a duty of care to members of the public with whom they come into contact and/or investigate, including Melonee Duval.

144. Defendants Penzone and Maricopa County breached this duty by failing to adequately supervise their officers in the Task Force.

145.     Defendants Penzone and Maricopa County breached this duty by failing to adequately train their officers with respect to the pursuit of suspects, the seizure of suspects, and the risks of using force in making seizures.

146.     Defendants Penzone and Maricopa County breached this duty by failing to adopt adequate and reasonable policies and training with respect to the pursuit of suspects, high risk stops, boxing in and ramming tactics, seizure of suspects, seizure of those occupying vehicles with suspects, and the risks of using force.

147.     At all times alleged herein, Defendant Mendoza and all other officers who took part in the shooting of Melonee Duval were acting within the course and scope of their employment, and as employees or agents of Defendants Penzone and Maricopa County.

148.     At all times alleged herein Defendants Penzone and Maricopa County were acting by and through their designated employees, officers and agents and are responsible for their conduct under theories of agency and *respondeat superior*.

149.     Defendants breached their duty to Melonee Duval by using unnecessary and unreasonable use of their vehicles and discharge of their firearms.

150.     As a result of these breaches, Defendants Penzone, Mendoza and Maricopa County caused Melonee Duval's death.

151.     Defendants Penzone, Mendoza and Maricopa County and their officers and employees that participated in the Task Force acted in concert with each other or pursuant to a common design.

152.     Defendants Penzone and Maricopa County and their officers and employees that participated in the Task Force gave substantial assistance or encouragement to Defendant Mendoza.

153.     Defendants Penzone and Maricopa County and their officers and employees that participated in the Task Force had the ability to correct, control, train, monitor, and restrain Defendant Mendoza.

154.     Defendants Penzone, Mendoza and Maricopa County and their officers and employees that participated in the Task Force failed to use reasonable care and recklessly disregarded obvious risks of harm to Melonee Duval.

155.     Defendants Penzone, Mendoza and Maricopa County and their officers and employees caused the death of Melonee Duval by their failures to use reasonable care and reckless disregard for the obvious risks of harm to Melonee Duval.

156.     Defendants Penzone, Mendoza and Maricopa County are vicariously liable for the conduct of their employees for causing Melonee Duval's death.

157.     Defendants Penzone, Mendoza and Maricopa County, through their officers, agents and employees, had a duty to use reasonable care in their conduct toward Melonee Duval, including a duty to protect Ms. Duval from harm, a duty to act reasonably toward her safety, a duty to show adequate concern for her safety and to preserve her safety; a duty to properly train their staff, and other duties alleged herein. Said Defendants breached these duties.  The breach of these duties proximately led to her being hit with improper gun fire and ultimately caused her untimely death.

158.     As a direct result of Defendants Penzone, Mendoza and Maricopa County's negligent, grossly negligent, deliberately indifferent, willful, wanton, and/or reckless conduct, Melonee Duval was killed, and Plaintiffs and all statutory beneficiaries of Melonee Duval sustained damages, including grief, suffering, emotional distress, loss of support, loss of love and affection, and loss of enjoyment of life.

159.     Employees of the Defendants Penzone and Maricopa County shot Melonee Duval without justification and their actions and inaction amount to death by negligence, gross negligence, reckless disregard, intent, wrongful homicide and/or murder.

160.     Defendants Penzone and Maricopa County and their officers and employees that participated in the Task Force acted in concert with each other or pursuant to a common design and/or gave substantial assistance or encouragement to that design and are therefore liable for Melonee Duval's death.

161.     If Melonee Duval's death had not ensued, she would have been entitled to maintain an action to recover damages for the conduct of Defendants Penzone and Maricopa County.

162.     Pursuant to A.R.S. § 12-611, Defendants Penzone and Maricopa County are liable to Melonee Duval's statutory beneficiaries for Ms. Duval's and Plaintiff's claims and damages.

163.     Plaintiffs are entitled to, at a minimum, compensation for the loss of love, affection, companionship, care, protection, and guidance since Melonee Duval's death and in the future; for the pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced and reasonably probable to be experienced in the future; for the reasonable

expenses of funeral and burial; for the reasonable expenses of necessary medical care and services for the injury that resulted in the death; and for other related damages.

164.     Pursuant to the theory of *respondeat superior*, Defendants Penzone and Maricopa County are responsible for the conduct of their officers and employees and are liable to Plaintiff for the damages resulting from their conduct.

165.     Defendants Penzone and Maricopa County are responsible for the training and supervision of their officers and employees and are liable for the acceptance and ratification of the conduct of the officers, as complained of herein, as being consistent with their customs, practices, and policies.

166.     Plaintiffs are therefore entitled to recover damages from Defendants Penzone, Mendoza and Maricopa County for all claims arising from the actions of their officers resulting in the death of Melonee Duval.

167.     Defendants Penzone and Maricopa County are jointly and severally liable for all claims arising from the actions of their officers that resulted in Melonee Duval's death.

168.     This Count is brought on behalf of the surviving parent and children of Melonee Duval by and through Issac Navaratte who brings this action on behalf of himself and all statutory beneficiaries of Melonee Duval pursuant to A.R.S. §12-612.

## CLAIMS BROUGHT PURSUANT TO 42 U.S.C. § 1983 and/or BIVENS v. SIX UNKNOWN AGENTS OF THE FEDERAL BUREAU OF NARCOTICS

### COUNT TWO
**Violation of 4th Amendment Right**
**To Be Free from Unlawful Seizures and Excessive Force**
**(Against Defendant Mendoza made by the Estate of Melonee Duval)**

169.     The foregoing paragraphs are incorporated as if fully set forth herein.

170.   This claim is brought by the Estate of Melonee Duval and is against Defendant Sean Mendoza.

171.   To the extent Sean Mendoza was acting under color of state law for and on behalf of Defendants Penzone and Maricopa County, this count is authorized and made pursuant to 42 U.S.C. §1983.  To the extent Sean Mendoza is certified or considered to be a federal officer deputized by the Federal Bureau of Investigations or US Marshall's service, this count is authorized by *Bivens v. Six Unkown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and is known as a *Bivens action*.

172.   As alleged herein, Defendant Mendoza was acting under color of state law when he deprived Melonee Duval of her rights under the United States Constitution.  Based on information and belief, he may also have been a federal agent of the United States deputized by the United States Marshals Service and/or the Federal Bureau of Investigation.

173.   Melonee Duval had a 4th Amendment Right to be free from unlawful searches and seizures and from excessive force.

174.   Deadly force is a seizure within the meaning of the Fourth Amendment.

175.   Before using deadly force, Defendant Mendoza was required to have reasonable or probable cause to believe Melonee Duval presented a threat of serious physical harm before he could justifiably use deadly force upon her. There was no such reasonable or probable cause.

176.   Law enforcement officers such as Defendant Mendoza may not use deadly force upon a suspect unless the suspect threatens the officer with a weapon or there is

probable cause to believe the suspect poses a significant threat of death or serious physical injury to the officer or others. When feasible, some warning should be given before deadly force is used. In this case, Melonee Duval was never a suspect of any crime, yet her driver's window was riddled with bullets. She posed no threat of death or serious physical injury to the officer or others.

177. Defendant Mendoza had a duty to protect Melonee Duval who he knew was neither a suspect nor a target of arrest.

178. Defendant Mendoza violated Melonee Duval's 4th Amendment Rights by his use of police vehicles to box in and ram the Duval pickup.

179. Defendant Mendoza violated Melonee Duval's 4th Amendment Rights by his use of police vehicles to trap Melonee Duval inside the Duval pickup.

180. Defendant Mendoza violated Melonee Duval's 4th Amendment Rights by firing gun rounds into the Duval pickup.

181. Defendant Mendoza violated Melonee Duval's 4th Amendment Rights when he aimed his firearm at the driver window of the Duval pickup where he knew that Melonee Duval was sitting.

182. Defendant Mendoza violated Melonee Duval's 4th Amendment Rights when he fired rounds into the window of the Duval pickup where he knew that Melonee Duval was sitting.

183. Defendant Mendoza violated Melonee Duval's 4th Amendment Rights when his bullets struck her and caused her death.

184.    The 4th Amendment violations of Defendant Mendoza were independent moving forces of Melonee Duval's great suffering, pain and ultimate death.

185.    Defendant Mendoza's actions were NOT objectively reasonable. No reasonable officer would believe that firing shots at Melonee Duval was necessary to prevent imminent death or great bodily injury.

186.    Because Defendant Mendoza's actions were done knowingly, intentionally, and maliciously, The Estate of Melonee Duval is entitled to recover compensatory and punitive damages from Defendant Mendoza.

## COUNT THREE
### Violation of 14th Amendment Right to Familial Society and Companionship
### (Against Defendant Mendoza made by Plaintiffs Billie Giordano, Issac Navarette, Adriyanna Navarette, Jaylen Klockenga)

187.    The foregoing paragraphs are incorporated as if fully set forth herein.

188.    To the extent Sean Mendoza was acting under color of state law for and on behalf of Defendants Penzone and Maricopa County, this count is authorized and made pursuant to 42 U.S.C. §1983. To the extent Sean Mendoza is certified or considered to be a federal officer deputized by the United States Marshals Service and/or the Federal Bureau of Investigations, this count is authorized by *Bivens v. Six Unkown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and is known as a *Bivens action*.

189.    The reckless and deliberate acts and omissions of Defendant Mendoza were the direct legal cause of the deprivation of Billie Giordano's, Issac Navarette's, Adriyanna Navarette's, and Jaylen Klockenga's constitutionally protected rights under the 14th Amendment to the care, companionship, and familial society of their respective daughter and mother Melonee Duval

190.    The acts and omissions of Defendant Mendoza were committed knowingly, intentionally, and maliciously, and for the purpose of causing harm.

191.    Because Defendant Mendoza's actions were done knowingly, intentionally, and maliciously, said Plaintiffs are entitled to recover compensatory and punitive damages from Defendant Mendoza.

**COUNT FOUR**
***Monell* Claims for Violation of 4th and 14th Amendment Rights**
**(Against Defendants Penzone and Maricopa County made by the Estate of Melonee Duval, Billie Giordano, Issac Navarette, Adriyanna Navarette, Jaylen Klockenga)**

192.    The foregoing paragraphs are incorporated as if fully set forth herein.

193.    Defendants Penzone and Maricopa County were deliberately indifferent to the proper training of their employees, including Defendant Mendoza, regarding the appropriate use of deadly or lethal force.

194.    Defendants Penzone and Maricopa County failed to train their officers regarding the proper use of deadly force.

195.    Defendants Penzone and Maricopa County had policies, customs or procedures that were deliberately indifferent to the rights of citizens to be free from deadly force, including the allowance of high risk maneuvers to be used when innocent bystanders are present and subject to danger.

196.    Defendants Penzone and Maricopa County maintained a written policy on use of force that unconstitutionally violates the rights of innocent persons who come in contact with MCSO officers.  Said written policy identifies "boxing-in" techniques which involve surrounding a suspect's vehicle with pursuit vehicles, which are then slowed to a

stop along with the suspect's vehicle. This is exactly what Defendants did in this case when the surrounded the Duval vehicle. (See Exhibit 1).

197. Defendants Penzone and Maricopa County maintained a written policy on use of force that unconstitutionally violates the rights of innocent persons who come in contact with MCSO officers. Said written policy defines "ramming" as the deliberate act of hitting a suspect's vehicle with a pursuit vehicle for the purpose of terminating a pursuit. Defendants rammed the Duval vehicle. The written policy states the ramming tactic is to be used only when a suspect has committed, or is committing, a felony involving serious injury or death, and there is a substantial risk of serious injury or death to others, if apprehension is delayed.

198. Defendants Penzone and Maricopa County maintained a written policy on use of force that unconstitutionally violates the rights of innocent persons who come in contact with MCSO officers. Said written policy states boxing-in and ramming tactics are "high-risk maneuvers" that shall not be engaged unless the pursued suspect has committed, or is committing, a felony involving serious injury or death, and there is a substantial risk of death or serious injury to other if apprehension is delayed.

199. The written policies identified herein allow the use of boxing-in and ramming techniques when the suspect is a passenger in the vehicle, and the driver and other passengers are innocent bystanders.

200. The written policies identified herein allow the law enforcement officers to improperly seize and inflict harm upon innocent occupants within the suspect vehicle that are not the intended suspect.

201.    The written policies identified herein were instrumental and were the moving force in violating 4th Amendment rights of Melonee Duval.

202.    Defendants Penzone and Maricopa County created a culture of impunity that encouraged officers to use deadly force, by failing to investigate uses of force, by failing to discipline officers for uses of force, and by failing to retrain officers regarding uses of force.

203.    Defendants Penzone and Maricopa County were deliberately indifferent to the proper training of their employees, including Defendant Mendoza, regarding the use of high risk tactics.

204.    Defendants Penzone and Maricopa County knew that boxing in and ramming tactics create a serious and unreasonable risk of harm to vehicle occupants and members of the public.

205.    Defendants Penzone and Maricopa County knew that their officers were engaging in high risk tactics on a regular basis.

206.    Defendants Penzone and Maricopa County failed to develop written policies regarding boxing in and ramming tactics to be used when innocent bystanders will be involved.

207.    Defendants Penzone and Maricopa County were deliberately indifferent to the 4th Amendment rights of members of the public, including Melonee Duval.

208.    Defendants Penzone and Maricopa County's unconstitutional policies, customs, and procedures were widespread and long lasting.

209. Defendants Penzone and Maricopa County's unconstitutional policies, customs, and procedures caused the deprivations of Melonee Duval's rights under the 4th and 14th Amendments to the United States Constitution.

210. Defendants Penzone and Maricopa County's unconstitutional policies, customs, and procedures caused the deprivation of Billie Giordano's, Issac Navarette's, Adriyanna Navarette's, and Jaylen Klockenga's rights to familial society and companionship under the 14th Amendment to the United States Constitution.

211. Defendants Penzone and Maricopa County are liable for all damages arising from the constitutional violations they caused.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A. For general damages, including but not limited to the loss of love, affection, companionship, and guidance resulting from the death of Melonee Duval, pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced and reasonably probable to be experienced in the future, and economic losses, hedonic damages, and for Melonee Duval's pre-death pain and suffering and for Melonee Duval's loss of life; Plaintiff seeks damages for Melonee Duval's pre-death pain and suffering solely under the Federal Claims alleged herein. Plaintiffs admit that Ms. Duval's pre-death pain and suffering cannot be recovered for their claims brought under Arizona State's wrongful death statute.

B. For special damages, including but not limited to the expenses of medical treatment, burial, and funeral;

C. For punitive damages against Defendant Mendoza;

D. For pre and post-judgment interest to the extent permitted by law;

E. For attorneys' fees and costs under 42 U.S.C. §1988 to the fullest extent permitted by law; and

F. Such other relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED** this 23rd day of September, 2020.

BURG SIMPSON
ELDREDGE HERSH JARDINE, PC

By  /s/  *Scott Ambrose*
Scott A. Ambrose, Esq.
Andrew L. Gartman, Esq.
2390 East Camelback Road, Suite 403
Phoenix, Arizona  85016
*Attorney for Plaintiffs Estate and Statutory Representative.*

LAW OFFICE OF SHILOH K. HOGGARD, PLLC

By  /s/ *Shiloh Hoggard*
Shiloh K. Hoggard, Esq.
850 Cove Parkway, Suite C
Cottonwood, Arizona 86326
*Attorney for Plaintiff Billie Giordano*

**Certificate of Filing and Service**

I hereby certify that on September 23, 2020, I electronically transmitted the foregoing document to the U.S. District Court Clerk's Office by using the CM/ECF System and transmitted a Notice of Electronic Filing to:

Ann Thompson Uglietta
Jonathan C. Simon
Maricopa County Attorney's Office
225 West Madison Street
Phoenix, Arizona 85003
uglietta@mcao.maricopa.gov
simonj@mcao.maricopa.gov
*Attorneys for Defendants Maricopa County, Sheriff Penzone*
*And Deputy Mendoza*

The Document was also served upon Defendant Mendoza by deliver to:

MICHAEL BAILEY
United States Attorney
District of Arizona

KATHERINE R. BRANCH
Assistant U.S. Attorney
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4449
Telephone: (602) 514-7500
Facsimile: (602) 514-7760
E-Mail: katherine.branch@usdoj.gov
*Attorneys forDefendant Mendoza*


/s/ *Nilda Jimenez*