1  Scott A. Ambrose, Esq. (012614)
   J. Tyrrell Taber, Esq. (005204)
2  **BURG SIMPSON ELDREDGE HERSH & JARDINE, PC**
3  2390 East Camelback Road, Suite 403
   Phoenix, Arizona 85016
4  Telephone: (602) 777-7000; Fax: (602) 777-7008
   SAMBROSE@BURGSIMPSON.COM
5  TTABER@BURGSIMPSON.COM
6  AZCOURT@BURGSIMPSON.COM
   *Attorneys for Plaintiff estate and beneficiaries*
7
8  Shiloh K. Hoggard, Esq. (023271)
   **LAW OFFICE OF SHILOH K. HOGGARD, PLLC**
9  850 Cove Parkway, Suite C
   Cottonwood, Arizona 86326
10 Telephone: (928) 649-3400; Fax: (928) 772-8695
11 SHILOH@HOGGARD-LAW.COM
   *Attorney for Plaintiff Billie Giordano*
12

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA - PHOENIX DIVISION**

| | |
|---|---|
| The Estate of Melonee Duval, by and through its personal representative, Issac Navarrette; Issac Navarrette, individually and on behalf of all persons with a statutory right of recovery for the wrongful death of Melonee Duval; Adriyanna Navarrette, an individual; Jaylen Klockenga, an individual; Billie Giordano, an individual, <br><br> *Plaintiffs*, <br><br> vs. <br><br> Paul Penzone, in his official capacity as Sheriff of Maricopa County; Maricopa County, a political subdivision of the State of Arizona; Sean Mendoza, individually and in his capacity as a deputy of the Maricopa County Sheriff's Office, <br><br> *Defendants*. | No. CV20-01206-PHX-JJT (MHB) <br><br> **PLAINTIFFS' RESPONSE TO DEFENDANTS MARICOPA COUNTY'S AND PAUL PENZONE'S MOTION TO DISMISS CERTAIN CLAIMS ALLEGED IN SECOND AMENDED COMPLAINT, PER RULE 12(b)(6), FED. R. CIV. P** <br><br> [DOC. 57] |

Plaintiffs respond to *Defendant Maricopa County's and Paul Penzone's Joint Motion to Dismiss Certain Claims Alleged in Second Amended Complaint*. As to the four (4) arguments set forth in the Motion, Plaintiffs summarize the following responses: **(1)** The Sheriff and County are not entitled to a dismissal of the Monell claims outlined in Count Four; the SAC adequately pleads written and unwritten policies, customs and practices that are the driving force of the Fourth Amendment violations; **(2)** The County is liable for tort along with the Sheriff. The County is a proper defendant for: (a) its own involvement in this case independent of the Sheriff, and (b) for *respondeat superior* of the deputies; **(3)** No claim for negligent intentional tort is alleged in the SAC. Plaintiffs properly pled alternative theories of liability. No dismissal based on alternatively pled theories of negligence or intentional tort is allowed at this juncture; and **(4)** The County is a proper party to the Wrongful Death claim outlined in Count One.

**I.  STANDARDS FOR RULE 12(B)(6) MOTIONS**

A motion to dismiss a complaint under Rule 12(b)(6) FRCP tests the legal sufficiency of the claims asserted in the complaint. Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001). A complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2) to evade dismissal. Porter v. Jones, 319 F.3d 483, 494 (9th Cir. 2003). Rule 8(a)(2) requires a pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The function of this pleading requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

2

'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007). All allegations of material fact are taken as true and construed in the light most favorable to plaintiff.  <u>Epstein v. Wash. Energy Co</u>., 83 F.3d 1136, 1140 (9th Cir. 1996).

**II.     SUMMARY OF ISSUES AND FACTS**

A repeated theme in Defendants' Motion is to incorrectly allege the SAC *does not allege sufficient facts to support the Counts alleged.* The Motion points to the following alleged deficiencies: facts alleging an unconstitutional written policy; facts alleging the written policy (CP-4) motivated the unconstitutional conduct; facts showing the boxing and ramming tactics were excessive or harmful; facts showing a causal link between the boxing and ramming procedures and the shooting; facts sufficient to establish unconstitutional customs and practices; facts alleging the Sheriff adopted the unconstitutional practices; facts establishing longstanding and widespread customs and practices; and facts regarding deliberate indifference and sufficient notice.

Oddly enough, every issue to which Defendants refer is actually well pled, in great detail, and with pronounced specificity.  It is as if Defendants tactic is to keep repeating the untruth in the hope the Court will not review the SAC to assess if the allegations are sufficiently pled.

For example, Defendants argue the SAC fails to allege sufficient facts to establish the boxing in and ramming tactics put Ms. Duval at serious risk of death or bodily injury, or their prior knowledge of same.  Nothing could be farther from the truth.  Defendants' written policy regarding boxing in and ramming techniques <u>specifically</u> states it is a "*High*

3

*Risk Maneuver*" with a "*high risk of injury*" to those involved. Paragraphs 55, 57, 61-68, 72, 78, 121, 122, 129-136, 197-199, 204 in the SAC provide pronounced specificity alleging facts showing how the Defendants' tactics knowingly put Ms. Duval at serious risk.

Another example of Defendants' mistruths is their statement the SAC fails to allege specific facts showing a direct causal link between the boxing and ramming tactics outlined in CP-4 and Duval's complained-of constitutional injuries from use of lethal force. On the contrary, the SAC outlines in great detail over 34 pages and 217 numbered paragraphs just how the Defendants' unconstitutional policies were the "moving force" behind the improper use of lethal force and created the environment for it to occur. Specifically, the SAC explains how boxing and ramming technique are inadequately planned by Defendants **without adequate consideration of the innocent passengers**; that alternative means of apprehending their suspects are available but ignored; how this was a multi-agency collaboration with at least six unmarked police cars involved, each containing numerous officers; that the multi-agency collaboration does not protect innocent citizens; that boxing in and ramming a vehicle is known to be a high-risk maneuver resulting in bodily injury; that such tactics create confusion and chaos; that Defendants fail to protect innocent passengers and are deliberately indifferent to their safety; that such violent seizures are dangerous and no protections are made for Ms. Duval or others; and that use of excessive or deadly force is a natural consequence of these failures. The link and "moving force" was fully explained in the SAC.

To summarize, this is an extremely well pled complaint that withstands the requirements of Rules 8 and 12. Obviously, the Court will review the SAC to see if

Defendants' arguments have merit. The simple response is that they do not. Plaintiffs have properly alleged an unconstitutional written policy and customs and practices. This was a complex operation that failed because of customs and practices deliberately indifferent to citizen safety. This was not a lone police officer wrongfully shooting a suspect. Indeed, a shooting of this nature comes from systemic problems that are properly addressed by Monell claims.

### III. THE MONELL CLAIMS AGAINST DEFENDANTS PENZONE AND MARICOPA COUNTY ARE VALID AND WELL PLED.

Defendants Penzone and Maricopa County seek dismissal of Fourth Amendment claims alleging violations of the U.S. Constitution regarding the fatal shooting of an innocent bystander during a high-risk police maneuver. As appropriately alleged in the SAC, Defendants Penzone and Maricopa County maintain identified, policies, customs and practices amounting to a deliberate indifference to the rights of innocent people with whom the police come in contact with during high-risk arrest maneuvers. Both written official policies and longstanding customs maintained by Defendants resulted in the alleged constitutional violations.

As factually alleged, Defendants have a written official policy regarding boxing in and ramming vehicles in order to apprehend a suspect. Said written policy is unconstitutional and was the "moving force" of the violations herein. First, the policy acknowledges these are dangerous, high-risk maneuvers, yet, on its face allows police to execute these procedures upon innocent bystanders in the suspect vehicle, unconstitutionally subjecting them to the risk of serious harm and seizure. It is because these written dangerous policies are knowingly allowed to be inflicted upon innocent

bystanders they are unreasonable and unconstitutional. Furthermore, and in addition to the illegal written policy, the SAC alleges and identifies widespread customs, practices, inadequate training, inadequate supervision, and a custom of tolerance of federal rights violations, all of which represent a deliberate indifference to the rights of innocent people, such as Melonee Duval. This is a very well pled Complaint showing this was not an isolated innocent. This was a complex and dangerous take down stemming from unconstitutional customs and policies.

**A.      Regarding Claims Brought Pursuant to 42 U.S.C. §1983, There Is No Claim of *Respondent Superior* Liability for the Actions of Defendant Mendoza.**

Citing Monell v. Dep't. of Social Serv. of N.Y., 436 U.S. 658, 691 (1978), Defendants correctly state there is no *respondeat superior* liability regarding the constitutional violations by Defendant Mendoza. A dismissal is not necessary because no such claim was ever made. To be clear, Plaintiffs are correctly alleging *respondeat superior* liability upon the moving Defendants for the state law torts committed by their agents/employees, including Defendant Mendoza. See Johnson v. Superior Court, 158 Ariz. 507, 763 P.2d 1382 (Ariz. App. 1988).

**B.      Plaintiffs' Second Amended Complaint Alleges Specific and Sufficient Facts Establishing *Monell* Claims against Defendants Penzone and Maricopa County.**

Defendants argue the SAC fails to allege specific facts showing an unconstitutional written policy, custom, practice, or deliberate act or omission from a policy maker, sufficient to state a Monell claim. Consider the events leading up to Melonee's windshield being riddled with bullets. This was not the act of a single law enforcement officer's disregard for safety. A lone officer's improper use of excessive force, by itself, does not

6

easily implicate an unconstitutional policy or custom of the employing municipality.

On the other hand, the very nature of Melonee Duval's shooting invokes, involves and implies a systemic, orchestrated operation of which the horrific fatality derived from customs and practices deliberately indifferent to the safety of the public. This case involves the grotesque failure of a complex police operation. **It would be naïve to conclude a tragedy from such a complex operation did not involve or stem from policies or practices amounting to a deliberate indifference.**

As alleged, Defendants' official policies allow dangerous high-risk take-down maneuvers upon innocent bystanders and were the moving force of the violations alleged herein. As alleged, Defendants' long lasting, widespread practices of unnecessarily placing innocent bystanders in harm's way during the apprehension of dangerous suspects constitute an unconstitutional custom and policy.

As alleged in great detail, this operation involved widespread <u>systemic failures</u> stemming from official policies and/or customs deliberately indifferent toward the safety and constitutional rights of citizens. Defendants' task force operates "*to locate and apprehend violent fugitives wanted on arrest warrants or probable cause.*"[1] As they knowingly chose to do in this case, Defendants routinely take down their target with violent boxing in and ramming tactics with no regard for the safety of innocent vehicle occupants, whom Defendants knew to be present. Defendants tailed and followed their suspect (Ernesto Izaguirre) and knew he was in the company of two innocent people who were not suspected of wrongdoing or subject to arrest. Defendants knew Melonee was driving the

---

[1] See https://www.mcso.org/SpecialOps/Fate#:~:text=12%20Most%20Wanted-,About,arrest%20warrants%20or%20probable%20cause.

7

vehicle with an underage female passenger in the back seat. Defendants knowingly followed Ms. Duval and tailed her with numerous unmarked police vehicles. Defendants knowingly put Ms. Duval at grave risk by using unmarked police vehicles to surround the Duval vehicle. The Defendants operation utilized at least six (6) vehicles, numerous law enforcement officers, the use of high-powered weaponry, and the use of dangerous tactical maneuvers.

It was the policies and customs of the Defendants <u>to involve innocent bystanders</u> in the apprehension of dangerous suspects, which is the driving force of the constitutional violations alleged herein. It was the policies and customs of Defendants that allowed this operation to take place <u>without a plan to protect and ensure the safety of the two innocent passengers.</u> It was the policies and customs of Defendants to have this complex operation focus exclusively on "getting their man at all costs" <u>without adequate protection of innocent citizens</u> — these tactics, training and practices are unconstitutional and killed Melonee Duval.

Pursuant to their policies, custom and practice, Defendants routinely put innocent people, like Melonee Duval, in grave risk without justification, violating rights and causing harm. Improper policies or customs were deliberately indifferent to <u>her</u> safety. Pursuant to their custom and practice, Defendants placed Melonee in an intolerable situation representing a deliberate indifference to her safety and protected rights. Instead of fostering appropriate customs and practices to protect innocent bystanders, Defendants' longstanding practice was to put citizens in danger. <u>All of this was well pled in the Complaint with sufficient detail</u>. This is the essence of a <u>Monell</u> claim.

Plaintiffs will not reiterate the numerous allegations in Docket 52, but suffice it to

say, Plaintiffs set forth in exhausting detail policies and customs resulting in the alleged constitutional violations. Indeed, the Complaint points to <u>official written policies</u> and customs of failing to protect innocent bystanders such as Ms. Duval during these high risk tactics. There is an exhausting explanation of how Defendants knowingly conduct Task Force operations of apprehending dangerous suspects while purposefully involving innocent bystanders **without adequate justification or protection**. There is a detailed accounting of how Defendants know these operations are dangerous, but still conduct such operations <u>with the involvement of innocent bystanders</u>. The Complaint explains at length how Defendants routinely fail to consider the safety of the public, which is instructive of their deliberate indifference. The Complaint further explains these inadequacies exist as long as the task force has been operating years before the incident. <u>This is a well pleaded complaint</u>.

Plaintiffs' SAC outlines an unconstitutional written and unwritten policies that specifically permit innocent bystanders to be involved in high-risk dangerous take downs of suspected felons. Defendants' official policy on high-risk boxing in and ramming of vehicles allows the tactic to be executed when innocent persons are known to be driving a car or passengers. Defendants' official policy explicitly acknowledges the "high risk of injury" in executing these tactics. (See Exhibit 1, Plaintiff's First Amended Complaint; Docket 29). A municipality's policy explicitly acknowledging substantial risks of serious harm exists demonstrates the municipality's knowledge of that risk for the purposes of a §1983 claim. <u>Castro v. City of Los Angeles</u>, 833 F.3d 1060, 1077 (9th Cir. 2016) (holding municipality had notice their customs and policies posed a substantial risk of serious harm and were deliberately indifferent based on written policies explicitly acknowledging

relevant substantial risk of serious harm).

Additionally, Plaintiffs' Complaint outlines several widespread customs and practices that were the driving force of the Constitutional violations alleged. Supported by legal precedence, these deliberately indifferent customs or practices form the basis of legitimate Monell claims. The safety of the public demands the prosecution of these unconstitutional policies, practices, training and customs.

In this case, Defendants failed to consider or maintain required policies to protect the public, including Ms. Duval. Defendants were required, but failed, to establish safety protocols and policies prohibiting dangerous maneuvers when innocent bystanders are known to be involved, or to otherwise take reasonable assurances for their safety.

**As alleged, an absence of a policy can create liability under Section 1983 where the municipality's inaction reflects a deliberate indifference to the constitutional rights of the citizenry**. Szabla v. City of Brooklyn Park, Minn., 486 F.3d 385, 392 (8th Cir. 2007) (en banc). In Atkinson v. City of Mountain View, Missouri, 709 F.3d 1201 (8th Cir. 2013) (citing Monell and City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)). This was alleged in the SAC.

Defendants' Motion to Dismiss argues there is no allegation Defendant Penzone had actual knowledge of the customs and practices that were deliberately indifferent to public safety. This is not true. The Complaint specifically, and on numerous occasions, alleges direct knowledge upon Penzone. Despite that, Defendant Penzone was sued in his official capacity and pleading his actual knowledge is NOT required. Once the plaintiff has established the existence of a longstanding practice or custom, a municipality "*may be liable for its custom irrespective of whether official policy-makers had actual knowledge*

*of the practice at issue.*" Los Angeles Police Protective League v. Gates, 907 F.2d 879, 890, (9th Cir. 1990). See also Thompson v. City of Los Angeles, 885 F.2d 1439, 1444 (9th Cir. 1989), overruled on other grounds by Bull v. City and Cty. of San Francisco, 595 F.3d 964 (9th Cir. 2010). "*The existence of custom as a basis for liability under § 1983 thus serves a critical role in insuring that local government entities are held responsible for widespread abuses or practices that cannot be affirmatively attributed to the decisions or ratification of an official policymaker but are so pervasive as to have the force of law.*" Gates, supra at 890.

Plaintiffs' SAC does not merely recite the elements. It alleges detailed facts. Indeed, Plaintiffs set forth detailed customs and practices of a longstanding nature, as well as official written policies. To sufficiently plead a Monell claim and withstand a Rule 12(b)(6) motion to dismiss, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." AE ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012) (quoting Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011)).

A Monell claim may be stated under three theories of municipal liability: (1) when official policies or established customs inflict a constitutional injury; (2) when omissions or failures to act amount to a local government policy of deliberate indifference to constitutional rights; or (3) when a local government official with final policy-making authority ratifies a subordinate's unconstitutional conduct. Clouthier v. Cty. of Contra Costa, 591 F.3d 1232, 1249-50 (9th Cir. 2010) (overruled on other grounds). All three avenues have been pled.

To impose liability on a local governmental entity for failing to act to preserve constitutional rights, a Section 1983 plaintiff must establish: (1) that she possessed a constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation. City of Canton v. Harris, 489 U.S. 378, 389-91, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989); Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992). **Whether customs or practices are 'longstanding' to establish a Monell claim represents a genuine issue of material fact to be resolved by the trier of fact.** Price v. Sery, 513 F.3d 962, 972 (9th Cir. 2007).

The SAC outlines detailed and specific policies, customs and practices regarding the use of force employed against Melonee Duval, an innocent bystander. Defendants maintain a policy, practice or custom of using boxing in and ramming techniques; display deliberate indifference by allowing innocent bystanders to be subject to said tactics; had actual and constructive notice of the dangers to the public regarding said tactics; have a systemic, longstanding indifference of failing to protect innocent bystanders when executing said tactics, show a deliberate indifference in failing to train and supervise; and maintain other ongoing failures, all of which were sufficiently alleged to withstand a motion to dismiss pursuant to Rule 12(b)(6), FRCP.

Defendants' Motion misstates or misapplies the law. Holding a municipality liable for Section 1983 violations requires a showing of just one of three conditions. It does not require all three. Plaintiff must satisfy one of three conditions:

> **A Section 1983 plaintiff may establish municipal liability in one of three ways. First,** the plaintiff may prove that a city employee committed the

alleged constitutional violation pursuant to a formal governmental policy or a 'longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity.' Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737, 109 s. Ct. 2702, 105 L. Ed. 2d 598 (1989) (internal quotation omitted); accord Monell, 436 U.S. at 690-91. **Second,** the plaintiff may establish that the individual who committed the constitutional tort was an official with 'final policy-making [**10] authority' and that the challenged action itself thus constituted an act of official governmental policy. See Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81, 89 L. Ed. 2d 452, 106 S. Ct. 1292 (1986); McKinley v. City of Eloy, 705 F.2d 1110, 1116 (9th Cir. 1983). Whether a particular official has final policy-making authority is a question of state law. See Jett, 491 U.S. at 737; City of St. Louis v. Praprotnik, 485 U.S. 112, 123-24, 99 L. Ed. 2d 107, 108 S. Ct. 915 (1988) (plurality opinion). **Third**, the plaintiff may prove that an official with final policymaking authority ratified a subordinate's unconstitutional decision or action and the basis for it. See Praprotnik, 485 U.S. at 127; Hammond v. County of Madera, 859 F.2d 797, 801-02 (9th Cir. 1988).

Gillette v. Delmore, 979 F.2d 1342, 1346-1347 (9th Cir. 1992) cert. denied, 510 U.S. 932, 114 S. Ct. 345, 126 L. Ed. 2d 310 (1993) (emphasis added); See also Trevino v. Gates, 99 F.3d 911 (9th Cir. 1996).

Plaintiffs' SAC alleges facts satisfying all three avenues of obtaining municipality liability, but need only satisfy one in order for the Court to deny the Motion to Dismiss.

Defendants' use and reliance on criminal suppression cases of Arizona v. Johnson, 555 U.S. 323 (2009) and Maryland v. Wilson, 519 U.S. 408 (199) is inappropriate. Those cases deal with suppression of evidence in a criminal case. Neither case pertains to the police boxing-in and ramming a suspect vehicle in order to seize not just one, but all passengers; neither case involves the use of excessive or deadly force; the cases involve investigatory stops; and most importantly, the cases state in order to seize a passenger, order them out of the car and pat them down, the officer must reasonably conclude the passenger could be armed and dangerous. See Arizona v. Johnson, supra 555 U.S. at 331. Ms. Duval was not armed and dangerous. Her seizure and snuffing out her life were not

justified.

## IV. MARICOPA COUNTY IS LIABLE FOR STATE LAW CLAIMS

Defendant Maricopa County seeks a dismissal of the state wrongful death claim arguing it is not vicariously liable for the conduct of Defendant Mendoza or the Sheriff. Courts routinely hold Maricopa County liable for the state law torts committed by the Sheriff or his deputies.

The U.S. District Court for the District of Arizona and the Ninth Circuit have relied on Flanders v. Maricopa County, 203 Ariz. 368, 378, ¶ 61, 54 P.3d 837, 847 (Ariz. App. 2002) and Braillard v. Maricopa County, 224 Ariz. 481, 487, ¶ 12, 232 P.3d 1263, 1269 (Ariz. App. 2010) to conclude that Maricopa County may properly be named as a defendant in a case involving the misconduct of the sheriff or his deputies. In Donahoe v. Arpaio, CV10-2756-PHX-NVW, 2011 WL 5119008, at *6 (D. Ariz. Oct. 28, 2011), the plaintiffs alleged various claims under state law and Section 1983, and Maricopa County moved to dismiss several claims on the basis that it was not vicariously liable, citing Fridena v. Maricopa County, 504 P.2d 58 (Ariz. App. 1972). Defendants in this case also rely on Fridena.

Outlining the issues and later confirming the matter in an oral ruling in the Donahoe case, Judge Wake concluded that Fridena is "clearly contrary to Arizona law:" Judge Wake explained:

> Respondeat superior is relevant for defining the scope of that conduct for which the employer or the County should be accountable. I believe the Fridena line of cases clearly errs when it holds that ability to control is a measure of county liability for the actions of the Sheriff or any other county officer. Ability to control really has nothing to do with liability. The Sheriff is the County. He is the final actor. It is simply not logical, doesn't serve any purpose, to say that the County escapes its liability

because any one of its final actors cannot be controlled by any of its other final actors. So I'm satisfied that is clearly contrary to Arizona law.

Exhibit-Docket 31-1 at 56-57.

In Donahoe v. Arpaio, Judge Wake intended to issue a ruling that declined to follow Fridena as a poorly-reasoned intermediate state appellate court decision which he was not bound to follow. See Ryman v. Sears, Roebuck & Co., 505 F.3d 993, 995 (9th Cir. 2007). However, Donahoe settled before any written opinion was issued. This Court need not go as far as Judge Wake was prepared to go; but this Court should recognize that Fridena does not actually support the veneer that Defendants assert for the purpose of a sufficiently pled complaint.

Defendants' Motion has two separate but identical headings regarding state law claims against the County. First, Defendants argue the County is not vicariously liable for state law torts of the Sheriff. Second, Defendants' Motion goes on to make a separate argument the County is not liable for negligent claims training or supervision of the Sheriff. If the municipality (a County) is vicariously liable for its representatives (the Sheriff) as proven herein, it makes no difference if the wrongful tort is excessive force itself, or negligent training that leads up to the wrongful shooting.

A compelling reason Maricopa County cannot be dismissed from this lawsuit is because the County, through its Board of Supervisors, injected itself into the activities of the Task Force. Docket 17 contains the Task Force Memorandum of Understanding. It outlines the Task Force operations that are alleged to have killed Ms. Duval. The Task Force was entered into by "Maricopa County" specifically. The document was signed, approved and agreed to by the Chairman of the Board of Supervisors for Maricopa County

15

who affixed his signature to the document on December 18, 2017.  The County's Deputy Clerk also signed the Task Force Memorandum as another indication of the County's direct involvement in their activities.  The County was part of the Task Force; they signed up for it. They are also liable.

**V.    DEFENDANTS' REQUEST FOR A DISMISSAL OF THE WRONGFUL DEATH CLAIM BASED ON *RYAN v. NAPIER* IS IMPROPER.**

Plaintiffs incorporate herein their Response to Defendant Mendoza's Motion to Dismiss on this issue.   Defendant Mendoza makes the same argument.  Accordingly, Plaintiffs incorporate herein, the entirety of Section II from its response to Mendoza's Motion to Dismiss.  Defendants seek to dismiss Plaintiffs' wrongful death claim based on Ryan v. Napier, 234 Ariz. 54, 425 P.3d 230 (2018).  Defendants' reliance on Napier in a Rule 12(b) motion to dismiss is grossly inappropriate.  Napier involved an excessive use of force case where the subject police officer intentionally released a K-9 to attack the plaintiff. Since the defendant intentionally injured the plaintiff, the Court ruled plaintiff was not entitled to recover on a theory of negligence. Evidence at trial established the officer's intent.

Napier specifically states a plaintiff may allege BOTH negligence and intentional tort claims.  Accordingly, the Defendants' motion must be denied.

> To be clear, plaintiffs may plead a negligence claim for conduct that is independent of the intentional use of force or plead negligence and battery as alternate theories if the evidence supports each theory.

Id. at 425 P.2d 238.

Napier cannot be a justification for a Rule 12(b) motion to dismiss as the case clearly allows for alternative pleading. Rule 8(d)(2) permits inconsistency and alternative pleading

in both legal and factual allegations. Plaintiffs' wrongful death (state law) claims arise under Arizona theories of negligence, gross negligence, deliberate indifference, willful, wanton, intentional conduct, murder and/or reckless conduct. Alternative theories vis-à-vis the various defendants are allowed and were properly pled. Plaintiffs' SAC alleges independent acts of negligence upon the County and Sheriff that caused this tragedy, *i.e.* negligent training and negligent operations that led to the escalated incident. These allegations also take this case out of the holding of Napier.

Ryan v. Napier is not applicable because, in this case, there is no "intentional" negligence tort alleged incongruent with the wrongful death claim. Specifically, Plaintiffs' Monell claims against the moving Defendants are based on a "deliberate indifferent" standard, as stated above (see Canton, supra). With respect to Plaintiffs' Section 1983 claims against Defendant Mendoza (who is not a party to this Motion) said claims do not involve an intentional tort, nor is Mendoza's intent involved in the Section 1983 excessive force claims. It is well established law that excessive and deadly force cases under Section 1983 are made **without** regard to the shooter's intent:

> As in other Fourth Amendment contexts, however, the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the Facts and circumstances confronting them, **without regard to their underlying intent or motivation**.
>
> Cite: Graham v. Connor, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443, 456, (1989). **Emphasis added**. See also A.K.H. v. City of Tustin, 837 F.3d 1005 (9th Cir. 2016) (holding that an officers excessive or deadly force under §1983 is analyzed under an 'objectively reasonable' standard 'without regard to their underlying intent or motivation.' "*It has long been clear that a police officer may not seize an unarmed, nondangerous suspect by shooting him dead.*" Id. at 1013)

## VI. CONCLUSION

In conclusion, the Court is respectfully urged to deny Defendants' Motion to Dismiss.

**RESPECTFULLY SUBMITTED** this 9th day of March, 2021.

**BURG SIMPSON**
**ELDREDGE HERSH JARDINE, PC**

By  /s/ Scott Ambrose
Scott A. Ambrose, Esq.
J. Tyrrell Taber, Esq.
2390 East Camelback Road, Suite 403
Phoenix, Arizona  85016
*Attorney for Plaintiffs Estate and Statutory Representative.*


**LAW OFFICE OF SHILOH K. HOGGARD, PLLC**

By   /s/ Shiloh Hoggard
Shiloh K. Hoggard, Esq.
850 Cove Parkway, Suite C
Cottonwood, Arizona 86326
*Attorney for Plaintiff Billie Giordano*

## Certificate of Filing and Service

I hereby certify that on March 9, 2021, I electronically transmitted the foregoing document to the U.S. District Court Clerk's Office by using the CM/ECF System and transmitted a Notice of Electronic Filing to:

Ann Thompson Uglietta
Jonathan C. Simon
Maricopa County Attorney's Office
225 West Madison Street
Phoenix, Arizona 85003
uglietta@mcao.maricopa.gov
simonj@mcao.maricopa.gov
*Attorneys for Defendants Maricopa County and Sheriff Penzone*

Daniel P. Struck
Nicholas D. Acedo
Ashlee B. Hesman
Struck Love Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
dstruck@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
*Attorneys for Defendant Sean Mendoza*


/s/ Nilda Jimenez