ALLISTER ADEL
MARICOPA COUNTY ATTORNEY

BY:   ANN THOMPSON UGLIETTA (013696)
      JONATHAN C. SIMON (029750)
      Deputy County Attorneys
      uglietta@mcao.maricopa.gov
      simonj@mcao.maricopa.gov

CIVIL SERVICES DIVISION
225 West Madison Street
Phoenix, Arizona 85003
Telephone (602) 506-8541
Facsimile (602) 506-4317
ca-civilmailbox@mcao.maricopa.gov
MCAO Firm No. 00032000

Attorneys for Defendants Maricopa County and Maricopa County Sheriff Paul Penzone

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| The Estate of Melonee Duval, by and through its personal representative, Issac Navarrette; Issac Navarrette, individually and on behalf of all person with a statutory right of recovery for the wrongful death of Melonee Duval,<br><br>Plaintiffs,<br><br>v.<br><br>Paul Penzone, in his official capacity as Sheriff of Maricopa County; Maricopa County, a political subdivision of the State of Arizona; Sean Mendoza, individually and in his capacity as a deputy of the Maricopa County Sheriff's Office,<br><br>Defendants. | No. CV20-01206-PHX-JJT (MHB)<br><br>**DEFENDANTS MARICOPA COUNTY'S AND MARICOPA COUNTY SHERIFF PAUL PENZONE'S JOINT REPLY IN SUPPORT OF THEIR JOINT MOTION TO DISMISS THIRD AMENDED COMPLAINT, PER RULE 12(B)(6), FED R. CIV. P.**<br><br>[DOCS. 77, 97] |

County Defendants' Joint Motion to Dismiss [Doc. 97] should be granted and the Third Amended Complaint ("TAC") [Doc. 77] should be dismissed.

## I. There Is No Cognizable Claim Against County Defendants.

Plaintiffs "concede the County Defendants are not liable for the conduct of Mendoza and Storm." [Doc. 102 at 2] This concession requires the dismissal of the claims against County Defendants in Count I and Count IV. Mendoza and Storm are the only named individual officers and they were acting as federal officers per federal policy, not MCSO deputies per MCSO policy. MCSO policy, MCSO employment, MCSO supervision, MCSO discipline are not sustainable theories of liability under state law or *Monell*, because there is no MCSO link to Plaintiffs' alleged constitutional injuries. Plaintiffs cannot proceed against County Defendants based upon mere speculation that unidentified future discovery supposedly might produce information regarding other individuals who were not working in the course and scope of federal employment as federal task force officers and who might have been involved in some unknown manner in the incident. Discovery follows from well-pled claims, not the other way around. "The purpose of Federal Rule of Civil Procedure 12(b)(6) is to enable defendants to challenge the legal sufficiency of a complaint without subjecting themselves to discovery." *Rutnam Wine Co. v. E&J Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).

Because there is no cognizable basis for the TAC claims (Count I, Count IV) against County Defendants, the Court should dismiss them. *See West v. City of Mesa,* 708 Fed. Appx. 288, 290, 293 (9th Cir. 2017) (dismissing Section 1983 *Monell* claims and state law claims against city where local officer was certified as acting on behalf of federal

government not city); *Burley v. Gagacki*, 729 F.3d 610, 618 - 619 (6th Cir. 2013) (Section 1983 *Monell* claim failed because the only municipal officer alleged to have participated in the conduct at issue was a federally deputized officer working under the auspices of the federal government, so federal policies were at issue, not those of the municipality).

**II.   Additional Reasons Requiring Dismissal of Section 1983 Municipal Liability Claims Against County Defendants [Count IV].**

Count IV must be dismissed for the additional reason that the TAC is devoid of specific facts necessary to establish Plaintiffs' Section 1983 Fourth Amendment or Fourteenth Amendment "familial association" claims against County Defendants.

**1. TAC Fails to Allege Specific Facts Establishing Unconstitutional Written Policy.**

The TAC fails to allege specific facts showing an unconstitutional written policy violating Duval's/Plaintiffs' Fourth Amendment rights. [Doc. 77, pp. 31-32] Plaintiffs point to language in MCSO Policy Number CP-4, which they allege identifies "high risk maneuvers" which can pose a "high risk of injury." Plaintiffs do not cite case law holding that such language creates a facially unconstitutional policy. Plaintiffs ignore CP-4's numerous express provisions regulating the use of boxing and ramming tactics, and requiring the consideration of potential safety risks to officers, suspects and the public. [Doc. 97, p. 9 (citing CP-4 provisions)] These provisions disprove Plaintiffs' assertion that CP-4 fails to account for potential safety risks from boxing and ramming tactics. CP-4 is a facially constitutional policy.

Under controlling case law, FATE/Task Force officers' alleged stop of Duval, who was driving a car in which Izaguirre was a passenger, was lawful in view of the officers' need

to effectuate the Izaguirre arrest warrant. *See Arizona v. Johnson,* 555 U.S. 323, 327 (2009)*; U.S. v. Savath*, 398 Fed. Appx. 237, 239 (9th Cir. 2010) ("Officers may stop a vehicle in which they reasonably believe the subject of a warrant is traveling to execute the warrant."); *U.S. v. O'Connor*, 658 F.2d 688, 691 (9th Cir. 1981) ("It is obvious that in executing the warrant, the agents could stop the vehicle in which they reasonably thought O'Connor was a passenger."); *See e.g., Maryland v. Wilson*, 519 U.S. 408, 413 - 415 (1997) (non-suspect passenger not unlawfully seized when officers stop car on suspicion of driver's criminal conduct and order non-suspect passenger out of the vehicle). [Doc. 97, pp. 8-10] Plaintiffs do not cite controlling law to the contrary. To the extent CP-4 tactics allegedly were used in stopping Duval's vehicle to effectuate Izaguirre's arrest, such tactics do not establish CP-4 as authorizing/motivating an unlawful seizure of Duval.

The TAC does not allege specific facts showing that alleged boxing and ramming tactics were used in an excessive manner causing <u>any</u> physical injury to Duval, let alone causing "serious injury or death" to Duval. The TAC does not allege specific facts showing the necessary direct causal link between FATE/Task Force officers' alleged use of CP-4 stop, boxing and ramming tactics, on one hand, and their alleged use of lethal force, on the other hand. CP-4 does not have language authorizing use of lethal force. It is an emergency driving and pursuit policy, only. [Doc. 83, *passim*; Doc. 97, 8-12] Plaintiffs do not identify specific fact allegations which would establish that Duval's shooting injuries were a foreseeable risk of boxing and ramming tactics. There are none. The TAC alleges that the officers' alleged use of boxing and ramming tactics was complete, <u>after</u> which they allegedly used lethal force upon Duval. [Doc. 77, ¶ 104] The TAC alleges Duval's shooting injuries resulted from the

use of lethal force, <u>not</u> boxing and ramming tactics.[1]  [Doc. 97, pp. 10-11] *See Cunningham v. Gates*, 229 F.3d 1271, 1290 - 91 (9th Cir, 2000) (vehicle containment "jamming" tactic was not unreasonable use of force to effectuate arrest, nor directly causally related to subsequent shooting/shooting injuries).  The TAC fails to show that CP-4 was the "driving force" behind the alleged use of lethal force resulting in Duval's/Plaintiffs' alleged constitutional injuries.

Plaintiffs' Response does not address County Defendants' arguments showing failure to state a cognizable 14th Amendment familial association claim.  Plaintiffs therefore have forfeited any defense of that claim.  *See Reyes v. Wells Fargo Bank*, 2017 WL 11568871, *4 (C.D. Cal. 2017) (collecting cases re: waiver of argument); LRCiv 7.2(i) (If "counsel does not serve and file the required answering memoranda ... such non-compliance may be deemed a consent to the ... granting of the motion."

"[O]nly official conduct that 'shocks the conscience' is cognizable as a due process violation. *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). "In the circumstances of a high-speed chase aimed at apprehending a suspected offender, where unforeseen circumstances demand an instant judgment on the part of an officer who feels the pulls of competing obligations, only a purpose to cause harm unrelated to the legitimate object of

---

[1] To the extent that Plaintiffs are arguing that alleged use of stop, boxing and ramming tactics provoked the officers' use of lethal force upon Duval, thereby violating Duval's/Plaintiffs' Fourth Amendment rights, this type of "provocation" argument was rejected by the U.S. Supreme Court in *County of Los Angeles, California v. Mendez*, 137 S. Ct. 1539, 1543 - 1544 (2017).  The Court held that the reasonableness of an officer's use of lethal force is determined exclusively by application of the factors established by *Graham v. Connor,* 490 U.S. 386 (1989), under the totality of the circumstances confronting the officer at the time of the use of lethal force, and it cannot be established on the grounds that the officer allegedly violated the Fourth Amendment in using other tactics in the course of events leading up to the use of lethal force.  *Id.* at 1543 – 44, 1546 - 1548.  This type of argument also fails for the reason that the TAC does not establish any preceding Fourth Amendment violations arising out of alleged use of stop, boxing and ramming tactics, in any event. *Supra*.

arrest will satisfy the shocks-the-conscience test. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 834, 118 S. Ct. 1708, 1711 (1998). The TAC contains no fact allegations that would 'shock the conscience' pursuant to 14th Amendment familial association standards. The officers using CP-4 tactics did so for the legitimate law enforcement purpose of arresting Izaguirre. Plaintiffs do not allege that the CP-4 tactics were used with the purpose to cause harm unrelated to his arrest. Plaintiff's 14th Amendment claim must be dismissed.

Plaintiffs' municipal liability claims based on written policy (Count IV) must be dismissed.

### 2. TAC Fails to Allege Facts Sufficient to Establish Unconstitutional Municipal Custom/Practice or Municipal Policymaker Deliberate Acts/Omissions.

Plaintiffs contend that the TAC shows there were "systemic failures" in municipal policymaking, training, supervision and discipline of FATE/Task Force officers in relation to Plaintiffs' Alleged FATE/Task Force Policy. [Doc. 102, p. 14] The TAC does not support this conclusory contention:

- Completely absent from the TAC are specific facts showing a longstanding and widespread custom and practice of conduct on the part of FATE/Task Force officers which is same/similar to the Duval Incident of sufficient duration, frequency and consistency necessary to establish such conduct is a traditional method of carrying out policy;

- Completely absent from the TAC are specific fact allegations showing that FATE/Task Force officers consistently and repeatedly engaged in establishing and executing tactical plans to arrest a fugitive while the fugitive is located inside a vehicle,

5

by using a "high risk maneuver of boxing in and ramming a suspect's vehicle," when the suspect's vehicle contains "occupants who are not suspected of any crime, and when an innocent non-suspect is driving the vehicle," by "drawing their weapons" at "unarmed persons and/or innocent bystanders," who pose little to no serious physical injury to the officers or the public, and employing "a high degree of force without regard to the minimum level of force necessary" to complete such arrest and without taking precautions for the safety of "innocent bystanders" located inside the vehicle in physical proximity to the suspected fugitive, thereby exposing them to "extreme risk of injury or death;"

- Completely absent from the TAC are specific fact allegations showing the Sheriff/County knew of FATE/Task Force officers' alleged excessive use of force during the Duval Incident (not just the fact of an officer-involved shooting) and made a "conscious, affirmative choice" to sanction the conduct, anyway;

- Completely absent from the TAC are specific fact allegations showing what prior FATE/Task Officer training (or supervision) consisted of, whether there were prior similar acts or any other indications that there was a need for more or different training (or supervision), and whether the alleged inadequacy was likely to result in future constitutional violations;

- Completely absent from the TAC are specific fact allegations showing the Sheriff/County knew about prior FATE/Task Force operations resulting in same or similar injuries as allegedly suffered by Duval, and showing they knew there was a related need to make changes to the training/supervision/discipline of FATE/Task

       Force officers, but they didn't make those changes and were deliberately indifferent to the risk of harm to Duval;

- Completely absent from the TAC are specific facts showing that Sheriff has engaged in a past pattern of repeatedly and consistently delaying internal administrative investigations into FATE/Task Force Officers' use of force, including use of lethal force, or repeatedly and consistently failing to discipline FATE/Task Force Officers for known unlawful use of force, including known unlawful use of lethal force; and

- Completely absent from the TAC are specific facts showing Sheriff engaged in a past pattern of routinely and regularly instituting such delays so as to prevent release of public records, prevent filing of lawsuits, or encourage unlawful use of force by FATE/Task Force Officers.

The TAC relies solely upon the single Duval Incident. This is wholly insufficient to establish long-standing and wide-spread policy failures and deliberate indifference on a "systemic" basis, and does not establish actionable municipal custom/practice, failure to train, failure to supervise or failure to discipline theories under Section 1983, as a matter of law. [Doc. 97, pp. 9 - 19]

       Plaintiffs' reliance on *Castro v. City of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) is misplaced. [Doc. 102, p. 16] Plaintiffs point to CP-4 language about safety risks posed by boxing and ramming tactics. As discussed *supra*, CP-4 expressly manages these safety risks via regulations on use and required consideration of safety of officers, suspects and the public. The TAC does not allege Duval was physically injured from alleged use of CP-4 boxing/ramming tactics. Rather, the TAC alleges that she was physically injured from

7

alleged use of lethal force, after completion of the alleged boxing/ramming tactics to stop the vehicle. CP-4 is an emergency driving/pursuit policy and does not address use of lethal force. CP-4 does not establish knowledge or constructive notice that use of boxing and ramming tactics to stop a vehicle was "substantially certain" to result in the "very type of harm" which allegedly befell Duval, that is, shooting injuries from subsequent use of lethal force, *Castro*, 833 F.3d at 1076, 1078, and therefore it does not show deliberate indifference to the risk of such harm.

Plaintiffs' municipal liability claims based on custom/practice, ratification, failure to train, failure to supervise and failure to discipline (Count IV) must be dismissed.

### III. **Additional Reasons Requiring Dismissal of State law Wrongful Death Claim [Count 1]**.

Count I must be dismissed for the following additional reasons. In their Response, Plaintiffs agree that the County must be dismissed from Count I. [Doc. 102 at 2, 4] The Response incorrectly contends that the County Defendants' Motion to Dismiss does not seek to fully dismiss the entire wrongful death claim against Sheriff Penzone. It clearly does. *See e.g.* Doc. 97 at 4-6, 20 - 21.

The Motion to Dismiss is clear that the TAC cannot establish a state law wrongful death claim against Sheriff Penzone because the only named individual defendants, Mendoza and Storm, were acting as federal officers under the course and scope of their federal employment, which Plaintiffs expressly acknowledge. No MCSO deputies acting in the course and scope of MCSO employment are named in this case. Sheriff Penzone is not liable under *respondeat superior*, negligent supervision or negligent discipline theories arising out of the conduct of federal task force officers/federal employees. Moreover, Sheriff Penzone

cannot be held liable based upon a hypothetical theory of alleged unidentified employee involvement. Plaintiffs have not alleged such claims with any degree of specificity. To the contrary, a close reading of the TAC and Response reveals little more than legal conclusions, a recitation of the basic elements of the causes of action, and speculation as to hypothetical actions that unnamed MCSO officers may have taken. [Doc. 77, ¶¶ 157-163, 165-166. 171-174] Such claims do not satisfy applicable Rule 8 standards. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007) (Rule 8 "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do… Factual allegations must be enough to raise a right to relief above the speculative level."). Additionally, the Ninth Circuit disfavors the use of fictitious defendants. *Wiltsie v. California Dept. of Corrections*, 406 F.2d 515, 518 (9th Cir.1968). Plaintiffs are not permitted to proceed against Sheriff Penzone solely on hypothesis and speculation.[2]

In addition, the controlling *Napier* case held that "negligent use of intentionally inflicted force" claims arising out of law enforcement conduct are not cognizable under state law. *Ryan v. Napier*, 245 Ariz. 54, 60 - 61, 425 P.3d 230, 236-237 (2018). Plaintiffs point to language in *Napier* which recognizes that plaintiffs can bring negligence claims for conduct "independent" of the intentional use of force by a law enforcement officer. [Doc. 102, p. 6] In *Napier*, the Court used the example of a law enforcement officer who

---

[2] Plaintiffs appear to allege that the notice of claim served on Sheriff Penzone is valid as to all MCSO employees. However, Arizona courts have repeatedly held that to comply with Arizona's notice of claim statute, a prospective plaintiff must furnish a copy of the Notice on "both the employee individually and to his employer." *Harris v. Cochise Health Sys.*, 160 P.3d 223, 230 (Ariz. Ct. App. 2007); *Nored v. City of Tempe*, 614 F.Supp.2d 991, 995 (D. Ariz. 2008). There is no "constructive notice of claim" via the employer, only. *Harris v. Cochise Health Systems*, 160 P.3d 223, 230 (Ariz. App. 2007),

unintentionally drops a K-9's leash, which results in the K-9 biting the plaintiff. *Napier*, 245 Ariz. at 62, 425 P.3d at 238.  Because such conduct is not intentional use of force, the plaintiff could bring an "independent" negligence claim. *Id*.  In contrast, the Court held that when a law enforcement officer intentionally releases and orders a K-9 to bite the plaintiff, such conduct is intentional use of force, and the plaintiff cannot bring a negligence claim. *Id.*, 245 Ariz. at 60 -61, 425 P.3d at 236 - 237.

Plaintiffs have not alleged "independent" negligence claims arising out of the alleged conduct of officers during the Duval Incident.  There are no TAC fact allegations showing that the officers unintentionally stopped the car, unintentionally boxed/rammed the car, or unintentionally shot their weapons.  The TAC's fact allegations assert that the officers acted in an intentional manner, *see, e.g.*, Doc. 77, ¶¶ 2, 61-63, 84-86, 88, 91, 111, 104, 118-120. *Napier* prohibits Plaintiffs' negligence claims arising out of alleged intentional law enforcement conduct.[3]  And contrary to the Response, Napier can be and has been the basis of dismissal on a Motion to Dismiss. *See Leibel v. City of Buckeye*, 364 F.Supp.3d 1027, 1044 - 1045 (D. Ariz. 2019).

**IV.    CONCLUSION.**

The Court should grant the Joint Motion to Dismiss and order the dismissal of the TAC claims asserted against County Defendants (Count I and Count IV).

---

[3] Plaintiffs' assertion of Section 1983 claims does not alter *Napier's* application to their state law wrongful death claim. While inapposite to the *Napier* issue, Section 1983 "deliberate indifference" is not a negligence standard. *See Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown,* 520 U.S. 397, 410, 117 S. Ct. 1382, 1390 (1997) ("[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.").

**RESPECTFULLY SUBMITTED** this 16th day of August 2021.

> ALLISTER ADEL
> MARICOPA COUNTY ATTORNEY
>
> By /s/ Ann Thompson Uglietta
>    ANN THOMPSON UGLIETTA
>    JONATHAN SIMON
>    Deputy County Attorneys
>    *Attorneys for Defendants Maricopa County*
>    *and Maricopa County Sheriff Paul Penzone*

### CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2021, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Honorable John J. Tuchi
United States District Court
Sandra Day O'Connor U.S. Courthouse
401 West Washington Street, SPC 83
Phoenix, Arizona 85003

Honorable Michelle H. Burns
Magistrate Judge
United States District Court
Sandra Day O'Connor U. S. Courthouse
401 West Washington Street
Phoenix, Arizona 85003

Scott A. Ambrose
Andrew L. Gartman
BURG SIMPSON ELDREDGE HERSH & JARDINE
2390 E Camelback Rd, Ste 403
Phoenix AZ 85012
sambrose@burgsimpson.com
agatman@burgsimpson.com
azcourt@burgsimpson.com
*Attorneys for Plaintiff Estate and Beneficiaries*

| | |
|---|---|
| 1 | |
| 2 | Shiloh K. Hoggard<br>LAW OFFICE OF SHILOH K. HOGGARD, PLLC |
| 3 | 850 Cove Parkway, Ste C<br>Cottonwood AZ 86326 |
| 4 | shiloh@hoggard_law.com |
| 5 | *Attorney for Plaintiff Billie Giordano* |
| 6 | Daniel P. Struck, Bar No.012377 |
| 7 | Nicholas D. Acedo, Bar No. 021644<br>Ashlee B. Hesman, Bar No. 028874 |
| 8 | STRUCK LOVE BOJANOWSKI & ACEDO, PLC<br>3100 West Ray Road, Suite 300 |
| 9 | Chandler, Arizona 85226 |
| 10 | dstruck@strucklove.com<br>nacedo@strucklove.com |
| 11 | ahesman@strucklove.com |
| 12 | *Attorneys for Defendant Sean Mendoza* |
| 13 | Kelli L. Taylor |
| 14 | Special Assistant United States Attorney<br>Acting Under Authority Conferred by 28 U.S.C. § 515 |
| 15 | California Bar No. 186100<br>Robert T. Matsui Courthouse |
| 16 | 501 I Street, Suite 10-100 |
| 17 | Sacramento, CA 95814<br>Kelli.L.Taylor@usdoj.gov |
| 18 | *Attorney for Defendant United States* |
| 19 | /s/*S Rojas* |